2003 WY 23

**Franklin Ross PAGE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–230.

Supreme Court of Wyoming.

Feb. 25, 2003.

Representing Appellant: Kenneth M. Koski, Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel.

Representing Appellee: Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Ericka S. Cook, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1] A jury convicted the appellant, Franklin Ross Page (Page), of felony possession of marijuana, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(A) (LexisNexis 2001). Page was sentenced to the custody of the Department of Corrections for a period of fifteen to thirty months. Page contends in this appeal that his trial counsel was ineffective in failing to move to suppress evidence obtained during a search of Page's residence. Page argues that such a motion would have been granted because the affidavit submitted in support of the warrant did not establish probable cause to search.

[¶2] We reverse.

## ISSUES

[¶3] The issues presented in this case are:

1. Whether defense counsel rendered ineffective assistance of counsel in failing to move to suppress evidence seized during a search of Page's residence?

2. Whether the judicial officer who issued the search warrant erred as a matter of law because the affidavit presented in support of the warrant did not establish probable cause to search?

## FACTS

[¶ 4] In early 2001, Page was living at a residence in Gillette with his girlfriend and his girlfriend's daughter. On March 6, 2001, a Campbell County Sheriff's deputy went to the residence to perform a welfare check on the child. His purpose was to ascertain the living conditions in the residence. Upon the deputy's arrival, the child's mother allowed him to enter the residence. Page was present. The deputy inspected the residence and made arrangements for the girl to reside with relatives until conditions in the residence could be improved.

[¶ 5] During the course of the inspection, the deputy noticed a pipe fitting with a duct-taped handle in the entry room. He picked it up, noticed burnt residue on the end, and asked what it was. Page replied that he used it to smoke tobacco. The deputy then asked Page if there were other similar pipes in the residence. Page produced another pipe, which he again said was used to smoke tobacco. Upon the deputy's assertion that the pipes did not smell like tobacco, Page admitted that he had smoked marijuana from the second pipe. The deputy then called another deputy to secure the premises while he obtained a search warrant.

[¶ 6] A circuit court judge issued a warrant to search Page's residence, based on the deputy's four-page affidavit. During the ensuing search, numerous items identified as drug paraphernalia, plus about .11 grams of marijuana, were seized. After his arrest, and after being advised of his "Miranda rights," Page admitted that the marijuana was his. The pipes seized before the warrant was obtained, the items seized after the warrant was obtained, and Page's admission that the marijuana was his were the State's primary evidence against Page at trial.

## THE AFFIDAVIT

[¶ 7] In four separately numbered paragraphs, the deputy's affidavit set forth the following information:

- The affidavit was being submitted with personal knowledge, based upon information and belief.
- The affiant was a fourteen-year veteran of the Sheriff's Office and a certified peace officer.
- The affiant had received training in controlled substance investigation and had instructed classes at the Wyoming Law Enforcement Academy on drug identification.
- The affiant believed that the following evidence of a crime was being concealed at Page's residence: "controlled substance(s), including but not limited to mari[j]uana, scales, U.S. currency, pipes, packaging materials, telephone tolls, ledgers, writings, cutting agents, rolling papers, other drug related paraphernalia, address books, storage unit records, and other items used in the furtherance of narcotics trafficking."
- The affiant had, on the same date, conducted a welfare check at the residence, during which he had learned the following information:
 - Page, his girlfriend, and the girlfriend's daughter lived there.
 - The three had been evicted from Squaw Valley Apartments and were in the process of fixing up the residence so they could live there.
 - There was a wood-burning stove in the den, with blistered paint on the wall behind it and melted plastic hanging from the ceiling.
 - Page admitted they were using extension cords to borrow electricity from the neighbors, there was no running water, the child bathed at the neighbor's house, the toilet is flushed by pouring water through it, and the pipes were frozen.
- As he was leaving the residence after the welfare check, the affiant had observed a pipe fitting with a duct-taped handle with burnt residue in the end protruding from the inner core of a toilet paper roll. In answer to the affiant's questions, Page allowed the affiant to look at the pipe, indicated that he used it to smoke tobacco, and produced another similar pipe with burnt residue.
- Another deputy and his "K-9 companion" then responded to the deputy's re-

quest for back-up assistance. Page refused the second deputy's request for permission to search the residence. That deputy then secured the residence while the affiant sought a search warrant.

- The affiant knows the following from his experience and training, and from information shared by other agents:
 - During the course of most searches for controlled substances pursuant to a search warrant, items of identification such as driver's licenses, and documents such as phone bills, rent receipts, checks, canceled mail envelopes, utility bills, ledgers, and personal written diaries and electronic digital diaries are often discovered, and which items are later useful in identifying the persons responsible for a crime and are used as evidence to prosecute those persons.
 - While executing search warrants for controlled substances, it is common to find persons on the premises and that those persons often are found to have controlled substances and/or evidence of controlled substance violations on their persons due to their association either as customers or other dealers, which is why they are found at the premises of someone who is dealing in controlled substances/narcotics.
- The affiant has seen the following from his years in law enforcement:
 - Persons involved in controlled substance(s) use and/or sales generally have also been associated with other controlled substances such as marijuana and/or persons who use other controlled substances such as marijuana.
 - Persons who use marijuana or have association with persons who are using marijuana generally have devices used to ingest the marijuana, including pipes, rolling papers, bongs and other devices.
- The affiant believes the following evidence of crime is being concealed at the Page residence: "controlled substance(s), including but not limited to mari[j]uana, scales, U.S. currency, pipes,

packaging materials, telephone tolls, ledgers, writings, cutting agents, rolling papers, other drug related paraphernalia, address books, storage unit records, and other items used in the furtherance of narcotics trafficking."

## STANDARD OF REVIEW

[¶ 8] We have recently repeated our well-established standard for reviewing claims of ineffective assistance of counsel:

" 'When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Herdt v. State,* 891 P.2d 793, 796 (Wyo. 1995); *Starr v. State,* 888 P.2d 1262, 1266–67 (Wyo.1995); *Arner v. State,* 872 P.2d 100, 104 (Wyo.1994); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986). The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Herdt,* at 796; *Starr,* at 1266; *Arner,* at 104; *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Under the two-prong standard articulated in *Strickland* and *Frias,* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Starr,* at 1266; *King v. State,* 810 P.2d 119, 125 (Wyo.1991) (Cardine, J., dissenting); *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986); *Frias,* 722 P.2d at 145. In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of [the] case." *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990). "The benchmark for judging any claim

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.'

*Chapman v. State,* 2001 WY 25, ¶ 6, 18 P.3d 1164, 1168–69 (Wyo.2001) (*quoting Grainey v. State,* 997 P.2d 1035, 1038–39 (Wyo.2000))."

*Becker v. State,* 2002 WY 126, ¶ 12, 53 P.3d 94, 98–99 (Wyo.2002) (*quoting Reyna v. State,* 2001 WY 105, ¶ 19, 33 P.3d 1129, 1134–35 (Wyo.2001)). An appellant bears the burden of proving that counsel was ineffective. *Barkell v. State,* 2002 WY 153, ¶ 10, 55 P.3d 1239, 1242 (Wyo.2002). Specifically, with reference to the allegations of this case, the failure to file a suppression motion does not constitute ineffective assistance of counsel *per se. Lancaster v. State,* 2002 WY 45, ¶ 58, 43 P.3d 80, 102 (Wyo.2002). Prejudice to a defendant can only be shown where, had the motion been made, it would have been granted, and had the evidence been suppressed, " 'only a limited amount of evidence was available to the prosecution to support a conviction.' " *Id.* at ¶ 59, 43 P.3d at 102 (*quoting Dickeson v. State,* 843 P.2d 606, 612 (Wyo.1992)).

 [¶ 9] Our recent jurisprudence reveals the development of a "separate state constitutional analysis" of search and seizure issues, emphasizing Wyo. Const. art. 1, § 4, which reads as follows:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

*See Hixson v. State,* 2001 WY 99, 33 P.3d 154 (Wyo.2001); *Cordova v. State,* 2001 WY 96, 33 P.3d 142 (Wyo.2001); and *Vasquez v. State,* 990 P.2d 476 (Wyo.1999).[1] Our review

of the sufficiency of an affidavit supporting the issuance of a search warrant is *de novo. Hixson,* 2001 WY 99, ¶ 7, 33 P.3d at 157. In applying a "totality of the circumstances" test, we give deference to the probable cause determination of the judge issuing the warrant, and the appellant has the burden of proving, by a preponderance of the evidence, that his rights were violated. *Id.* The test is as follows:

"In order to issue a search warrant, the judge or magistrate must have a 'substantial basis' for concluding that probable cause exists. * * * The judge or magistrate must be supplied with sufficient information to support his independent judgment that probable cause exists. * * * The affidavit 'must include facts sufficient to warrant a reasonably prudent and cautious man to believe that a crime has been committed and that there is evidence of the crime at the place to be searched.' * * * While mere suspicion is not enough, certainty is not required. * * *

There is a presumption of validity with respect to the affidavit supporting a search warrant. * * * Furthermore, the affidavit is to be tested by much less vigorous standards than those governing the admissibility of evidence at trial. * * * The issuing judge's determination should be paid great deference upon appeal. * * * Because of the preference for warrants, and the desire to encourage law enforcement personnel to seek warrants, any doubt should be resolved by sustaining the search."

*Id.* at ¶ 6, 33 P.3d at 156–57. Because the Wyoming Constitution, unlike the Fourth Amendment, requires an affidavit, rather than just an oath or affirmation, we have held that sufficient factual support for issuance of the warrant must be found within the affidavit, itself, and may not be provided by additional testimony at the time the warrant is issued. *Hixson,* 2001 WY 99, ¶ 7, 33 P.3d

---

1. The Fourth Amendment to the United States Constitution reads as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

at 157; *Cordova,* 2001 WY 96, ¶ 13, 33 P.3d at 148.[2]

## DISCUSSION

[¶ 10] The deficiencies in the affidavit that was used to obtain the search warrant in this case are patent. To begin with, the affidavit states that the affiant's "personal knowledge" is based upon "information and belief," the latter standard having long been found wanting in this state. *Cordova,* 2001 WY 96, ¶ 16, 33 P.3d at 149; *State v. Peterson,* 27 Wyo. 185, 194 P. 342, 348 (1920). Next, while the affiant's training and experience are factors to be considered, especially in the context of a warrantless arrest or a warrantless search, they have less validity in determining the existence of probable cause for the issuance of a search warrant. *Cordova,* 2001 WY 96, ¶ 16, 33 P.3d at 149. That is because the judge[3] is the one charged with making the ultimate determination; he may not simply rely on the claimed expertise of law enforcement officials. *Id.*

[¶ 11] There is nothing factual within the affidavit to support the paragraphs detailing what the affiant "believes" and "knows" about what he is likely to find if the search is authorized. Indeed, these paragraphs appear to be "boilerplate" taken from a form intended for use when a search of a known drug *dealer's* premises is contemplated.[4] Similarly, the paragraphs setting forth the results of the welfare inspection, and noting the presence of the second deputy and his dog, present no facts from which a detached judge could infer the presence of controlled substances or any other evidence of a crime. In particular, a refusal to consent to a search may not form any part of the basis for probable cause to search. *United States v. Skidmore,* 894 F.2d 925, 927 (7th Cir.1990); *State v. Washington,* 623 So.2d 392, 397 (Ala.Cr.App.1993). *See also United States v. Manuel,* 992 F.2d 272, 274

(10th Cir.1993); *State v. Moreno,* 619 So.2d 62, 66 (La.1993); and *Garcia v. State,* 103 N.M. 713, 712 P.2d 1375, 1376 (1986).

[¶ 12] The only relevant facts contained in the affidavit in the present case are those set out in the paragraph describing the two pipe fittings with duct-taped handles and burnt residue. And there is no indication in the affidavit that the pipes were used to ingest marijuana or any other controlled substance.[5] Page claimed he used them to smoke tobacco. The affiant makes no claim to the contrary, either based on his observations or his training and experience. It is certainly "too much of a leap" to allow the issuing judge to speculate that the affiant must have thought the pipes were used to ingest controlled substances.

[¶ 13] In the hierarchy of protection against unreasonable searches and seizures, the location deserving the highest level of protection is the personal residence. In this area of the law, a man's home truly is his castle. *Peterson,* 194 P. at 345. A citizen's expectation of privacy, which is the starting point for analyzing the question of the reasonableness of a search or seizure, is certainly at its highest level in his home. For that reason, it is imperative in cases of residential searches that we keep in mind the limitations upon the deference we are to afford to the findings of the judge issuing a search warrant.

> This deference places the burden of establishing a constitutional violation by a preponderance of the evidence on parties claiming that their rights were violated. However, it is
>
>> "not to be employed to blindly sustain the actions of the magistrate or to place any reviewing court in a position that it may refuse to examine the factual basis for such issuance. To refuse or to fail to do so could result in serious erosion of one of our most valuable constitutional

---

2. The affidavit may, however, be formally supplemented under W.R.Cr.P. 41(c). *See Hixson,* 2001 WY 99, ¶ 7 n. 4, 33 P.3d at 157 n. 4.

3. We use the word "judge" as a general term to include all judicial officers.

4. The lack of care in construction of the affidavit is evidenced by the fact that ten lines of such boilerplate are repeated in two separate paragraphs.

5. Inexplicably, Page's alleged admission that he used the second pipe to smoke marijuana was not mentioned in the affidavit.

rights, and unless there is factual basis for determination of probable cause this court would be evading its responsibility by failing to declare this to be the case." *Cordova*, 2002 WY 96, ¶ 11, 33 P.3d at 148 (*quoting Smith v. State*, 557 P.2d 130, 133 (Wyo.1976)).

[¶ 14] When the search warrant was issued in this case, the issuing judge knew only that the affiant had located in the residence two duct-taped pipe fittings with burnt residue that the owner claimed were used to smoke tobacco. Under an objective test, that is simply too little information to justify the sweeping assertions made by the affiant and relied upon by the judge in issuing the warrant. In his affidavit, the affiant does not even claim that the pipes did not smell like they had been used to smoke tobacco, or that they smelled like they had been used to smoke marijuana, or that they resembled other homemade instruments used to smoke marijuana. The gap from fact to inference was simply too great for the warrant to have been issued in this case.

[¶ 15] We must assume that, had this issue been raised in the district court by defense counsel, the district court judge would have applied the same law and would have reached the same conclusion that we have reached. A motion to suppress the evidence obtained as a result of the search, including Page's later admission, would have been granted, leaving the State with no evidence with which to prosecute Page. Given the fact that the State's entire case rested on this evidence, no reasonable attorney would have foregone the opportunity to test the search warrant via a motion to suppress. Page was clearly prejudiced by counsel's failure in that regard. Page received ineffective assistance of counsel.

## GOOD FAITH EXCEPTION

[¶ 16] Near the end of its brief, the State opines that "[e]ven if the affidavit were deemed deficient, the search of Appellant's house and the seizure of the evidence in question can be sustained under the 'good faith' rule set out in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)." The State then goes on to describe how in *United States v. Leon*, 468 U.S. 897, 920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court fashioned a good faith exception to the exclusionary rule whereby, if an officer relies in good faith upon a search warrant, the fruits of the search will not be suppressed just because the warrant is later determined to have been invalid. While we acknowledge the existence of this exception under the Fourth Amendment, we have never been called upon to determine whether the same exception should be recognized under Wyo. Const. art 1, § 4. The instant case is not the proper one in which to take up this task. Neither side has presented the issue as part of a separate state constitutional analysis and we are not inclined to pursue the issue absent such input.

## CONCLUSION

[¶ 17] Defense counsel was ineffective in failing to move to suppress the evidence obtained in the search of Page's home pursuant to the warrant. Page was prejudiced by introduction at his trial of the evidence that would have been suppressed had such a motion been made. Without such evidence, it is probable that the trial would have had a different outcome. Indeed, without the illegally obtained evidence, it is highly likely that there would have been no trial, since the State had no other evidence.

[¶ 18] Resolution of this case in this manner obviates the need separately to answer the second issue posed by Page.

[¶ 19] Reversed.