2005 WY 68

**In the Interest of TJS, a minor child, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

No. C–04–11.

Supreme Court of Wyoming.

June 15, 2005.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶1] TJS, a minor, was found guilty of delivering a controlled substance in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis 2003) and was determined to be a "delinquent child" as defined by Wyo. Stat. Ann. § 14–6–201(a)(x) (LexisNexis 2003). In this appeal, TJS contends that a search warrant was issued without probable cause and that the district court erred in failing to suppress evidence obtained as a result of a search of his residence authorized by the warrant. We affirm.

## ISSUE

[¶2] TJS states his solitary issue on appeal as:

Whether the officer who issued the search warrant erred as a matter of law because the accompanying affidavit lacked sufficient and adequate probable cause.

## FACTS

[¶3] Al Nelson is an officer with the Thermopolis Police Department. On December 3, 2003, he was asked by the chief of police to interview a confidential informant (CI). The CI was a 14 year old minor who allegedly had information concerning marijuana use by several high school students during their school lunch break.

[¶4] Officer Nelson and another Thermopolis police officer, Jason Converse, interviewed CI on December 3, 2003. The interview was video and audio taped. A parent of CI watched and listened to the interview from a location in the dispatch office.

[¶5] During the interview, CI advised the officer that he had smoked marijuana on several occasions at the home of TJS, with TJS and other juveniles. The most recent incident occurred on December 2, 2003, the day before the interview. CI described the house, the location of the house, the amount of marijuana, the location of the marijuana, the drug paraphernalia used and the location of the paraphernalia.

[¶6] The next day, Officers Nelson and Martinez conducted surveillance of the residence. They located the residence described by CI. The residence was the color described by CI. During their surveillance, at 11:41 a.m., they observed TJS and three other juveniles enter the residence. The juveniles remained in the residence for approximately 15 minutes before leaving in the same vehicle in which they had arrived.

[¶7] Later that day, Officer Nelson sought and obtained a search warrant for the premises. He signed an affidavit in support of his request for the warrant. The following day, December 5, 2003, the warrant was executed.

[¶8] During the search of TJS's home, marijuana and drug paraphernalia were found. A petition to adjudicate TJS delinquent was filed. TJS subsequently filed a motion to suppress claiming that the search warrant was not supported by probable cause. The motion was denied and the juvenile action proceeded to hearing. After hearing, TJS was found to have unlawfully delivered marijuana and was adjudicated delinquent based on such finding. This appeal followed.

## STANDARD OF REVIEW

[¶9] We apply a *de novo* standard of review when evaluating the issuance of a search warrant under Article 1, § 4 of the

Wyoming Constitution. *Urbigkit v. State*, 2003 WY 57, ¶ 9, 67 P.3d 1207, ¶ 9 (Wyo. 2003). We have previously stated:

Indeed, *de novo* review is particularly appropriate under these circumstances. The reasons which normally underlie deferring to the district court's denial of a motion to suppress—its ability to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions at the hearing on the motion—are absent when reviewing the sufficiency of an affidavit to support a determination of probable cause. Because art. 1, § 4 requires that all information the issuing officer relied upon to make the determination be included within the affidavit, this court is in essentially the same position as the issuing magistrate.

*Cordova v. State*, 2001 WY 96, ¶ 10, 33 P.3d 142, ¶ 10 (Wyo.2001).[1]

▇▇▇ [¶ 10] An affidavit presented in support of a search warrant is presumed valid. *Page v. State*, 2003 WY 23, ¶ 9, 63 P.3d 904, ¶ 9 (Wyo.2003). Search warrant affidavits are tested by a less vigorous standard than those governing the admissibility of evidence at trial. *Id.* We interpret a search warrant affidavit "in its totality in a 'commonsense and realistic fashion.'" *Cordova*, ¶ 29. Because of the desire to encourage law enforcement personnel to seek warrants, any doubt should be resolved by sustaining the search. *Page*, ¶ 9 (citing *Hixson v. State*, 2001 WY 99, ¶ 6, 33 P.3d 154, ¶ 6 (Wyo.2001)).

### DISCUSSION

▇▇ [¶ 11] TJS contends that the search warrant was erroneously issued. He asserts that the magistrate lacked probable cause to issue the warrant. His attack on the validity of the warrant focuses upon the sufficiency of the affidavit submitted in support of the request. TJS contends that the issuance of the warrant and subsequent search of his residence violates Article 1, § 4 of the Wyoming Constitution.[2]

▇▇ [¶ 12] In order to properly issue a search warrant, a magistrate must have a substantial basis for concluding that probable cause exists. *Cordova*, ¶ 12. The test for determining the existence of probable cause is whether the factual situation described in the affidavit is sufficient to cause a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed. *Id.* Additionally, there must be an adequate showing that the fruits of the crime or the evidence thereof are in the area or structure sought to be searched. *Id.* The affidavit must include sufficient information to enable the issuing officer to make an independent judgment that probable cause exists for the warrant. *Cordova*, ¶ 13. It must include more than bare conclusions of the affiant. *Id.*

▇▇ [¶ 13] If an affidavit contains hearsay from informants, sufficient facts must be presented in the affidavit to allow the judicial officer to "make an independent judgment as to the third party's credibility, veracity, relia-

---

1. Relying on Wyoming precedent, both parties stated the applicable standard of review in this case as *de novo* with deference afforded to the issuing magistrate's determination of probable cause for issuance of a search warrant. *See Cordova v. State*, 2001 WY 96, ¶¶ 10–11, 33 P.3d 142, ¶¶ 10–11 (Wyo.2001); *Urbigkit v. State*, 2003 WY 57, ¶ 9, 67 P.3d 1207, ¶ 9 (Wyo.2003) (stating that the applicable standard of review is *de novo* with great deference paid to the issuing magistrate's determination of probable cause). *See also Hixson v. State*, 2001 WY 99, ¶ 7, 33 P.3d 154, ¶ 7 (Wyo.2001) (standard of review is *de novo* with deference given to the issuing magistrate); *Page v. State*, 2003 WY 23, ¶ 9, 63 P.3d 904, ¶ 9 (Wyo.2003) (review is *de novo* with deference given to the probable cause determination of the judge issuing the warrant). Although these cases indicate the standard is *de novo* re-

view with deference given to the issuing magistrate, we recognize an inherent conflict in such a standard of review. Simply stated, there cannot be a *de novo* review if the reviewing court affords deference to the issuing magistrate. The applicable standard for reviewing the sufficiency of an affidavit to support the issuance of a search warrant under Article 1, § 4 of the Wyoming Constitution is *de novo*.

2. Article 1, § 4 of the Wyoming Constitution states:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

bility and basis of knowledge in reaching the ultimate determination of the existence of probable cause." *Cordova*, ¶ 15.

[¶ 14] The affidavit submitted by Officer Nelson in support of his search warrant request reads in full as follows:

### AFFIDAVIT OF AL NELSON

THE UNDERSIGNED, Al Nelson, being of lawful age, and being first duly sworn upon his oath, deposes and says:

1. That I am a police officer employed by the Town of Thermopolis, Hot Springs County, Wyoming.

2. That I have reason to believe that at 1225 Canyon Hills Road, Lot # 22, described as a 1981 Medallion 16′ × 72′ mobile home, VIN# 6513N, Title # 15–0106120, Decal # 145 in Thermopolis, Wyoming and more particularly described as Trailer Lot # 22 in a Tract of land located in Lot 2 of Section 2, Township 42 North, Range 95 West, 6th P.M., Hot Springs County, Wyoming, more particularly described as follows: [legal description omitted], Thermopolis, Hot Springs County, Wyoming, owned by [names omitted] and currently occupied by Jayme Don [S], [TJS] and Jeanette [S] there is being concealed certain property, to wit: controlled substances, illegal drugs, or evidence indicating the illegal distribution and/or use of controlled substances and/or illegal drugs, plus documentation, whether it be written, audio, video or visual pertaining to the distribution and/or use of controlled substances and/or illegal drugs, to include, but not limited to drug paraphernalia, packaged materials, containers, photographs, lock boxes and/or other items used to secure, store or use controlled substances and/or illegal drugs, and other evidence of illegal drug use and/or distribution, and/or evidence of ownership or control, which

[ ] is stolen or embezzled in violation of law;

[X] is designed or intended for use, or which is or has been used as the means of committing a criminal offense;

[X] is possessed, controlled, designed, or intended for use, or which is or has been used in violation of any law;

[X] tends to show a crime has been committed;

[X] tends to show that a particular person has committed a crime.

5. [sic] The facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

On December 3, 2003 Chief of Police Jim Weisbeck informed Thermopolis Police Officer Jason Converse and myself, Thermopolis Police Officer Al Nelson, that he had a Confidential Informant (hereinafter CI) a minor 14 years old (DOB 01–09–1989) coming in who had information about some juveniles possibly smoking marijuana during their high school lunch break. At approximately 5:15 p.m. the CI, [O]fficer Converse and I met in the interview room. A parent of the CI was in dispatch watching and listening to the interview, which was being video and audio taped.

Officer Converse asked the CI to explain to us what he knew and any involvement he had with other high school kids and the smoking of marijuana. The CI stated substantially as follows:

That it was the Tuesday one week before the Tuesday of Thanksgiving, that he had smoked marijuana with the other juveniles. A minor male, [TJS] (08–25–87) had asked him to go along with him and a couple other kids to smoke some pot at [TJS]'s house. That a red-headed girl named [B] LNU drove him, [TJS], another male named [R] LNU, and a minor female, A.O. (02–07–88) to [TJS]'s house. When asked if he knew the last names of any of the other kids, the CI stated "no". I asked the CI if [R]'s last name could possibly be [A], and the CI stated that he, [R], lived off of a street by Chevy Chase. Upon further questioning the CI stated they smoked the marijuana in [TJS]'s room. The CI stated that the marijuana was located in a grey case under the tv in [TJS]'s bedroom. The CI stated there were "2

bags" of marijuana in the case. When asked if he noticed any other drugs in the case, the CI stated "no". The CI indicated that when he left the house the grey case was still in the bedroom in the same location. When asked, the CI stated that they had "used a long bong pipe that [TJS] had" to smoke the marijuana. When asked about other pipes or bongs, the CI stated there were two long bong pipes stored in a long red tube to hide them by the TV in [TJS]'s room. That there was also another pipe somewhere by the TV. The CI stated that all of the kids had smoked the marijuana. When asked how many times he smoked marijuana at [TJS]'s house, the CI stated Tuesday thru Friday, and the following Monday and Tuesday before Thanksgiving, and then again on Tuesday the 2nd of December. When asked who had gone with him on the 2nd of December to [TJS]'s house to smoke marijuana the CI stated it was "[TJS], [R], himself and [J]". When asked if [TJS]'s parents were ever there the CI stated "I think maybe his dad was there once" but the CI was not sure. When asked what [TJS]'s dad's name was, the CI stated "I think it's Jamie". When asked if because of the amount of marijuana they had been smoking whether it depleted the amount of marijuana [TJS] had and if so did [TJS] ever get new stuff. The CI stated "I think the Thursday before Thanksgiving he ([TJS]) might have gotten some". When asked how much, the CI stated "about this much" (using two fingers to show how much). [sic] When asked to describe where [TJS]'s house was, the CI stated "the other trailer court over by me, the last trailer in on the left, a blue one.". [sic] When asked which entrance to the trailer they had used, the CI stated "the one next to the cemetery where there were no trailers across from [TJS]'s house.". [sic]

Through subsequent investigation I was able to learn that the address of the residence described by the CI was 1225 Canyon Hills Road # 22. A vehicle outside the residence came back registered to Jamye [S].

On December 4, 2003 at 11:20 a.m., Officer Martinez and I conducted surveillance of the residence located at 1225 Canyon Hills Road, # 22, a blue colored trailer house, located at the southeast corner of the trailer park, the trailer closest to the cemetery. At 11:39 a.m. I observed a purple Pontiac (WY 15-3753), registered to [SB],[address omitted], Thermopolis, Wyoming, pull up to the residence and four youths got out. I recognized the driver of the vehicle as [SB]. I also recognized passengers [MB], [TJS,] and [RA]. At approximately 11:41 a.m. all four individuals started into the residence. As the four youths were entering the trailer, I observed Jayme [S] leave the trailer and get into a brown Chevy Blazer, (WY 15-1699) registered to Jeanette [S], with an address of 1225 Canyon Hills Road, lot # 22, Thermopolis, Wyoming, and leave the residence. At approximately 11:52 a.m. I observed the same brown Chevy Blazer come back and park in front of the trailer and Jayme [S] got out and headed into the trailer. At approximately 11:54 a.m., I observed the same 4 youths come out of the trailer, meet and pass Jayme [S] in the yard as Jayme [S] was going back into the trailer, and the four youths got in the purple Pontiac and left. At 12:02 p.m., Jayme [S] came out of the trailer along with an unidentified red headed woman and left in the [b]rown Chevy Blazer.

I later reviewed a report of Thermopolis Police Sergeant Mike Chimenti. In the report [O]fficer Chimenti stated that at approximately noon on December 4, 2003 he observed a maroon and white convertible, license plate 15-3753 pull into the parking lot of the high school. Officer Chimenti observed 4 males exit the vehicle, [MB], [SB], [RA] and [TJS], and walk across the parking lot toward the high school building. I know Sergeant Chimenti to be the school resource officer for the Thermopolis Police Department who is assigned to the Hot Springs County High School here in Hot Springs County, Wyoming.

/s/

Al Nelson
Thermopolis Police [O]fficer

STATE OF WYOMING )
)ss.

COUNTY OF HOT SPRINGS )

The above and foregoing Affidavit for Search Warrant was subscribed and sworn to

before me personally by Al Nelson, at Thermopolis, Hot Springs County, Wyoming on December 4, 2003.

/s/

District Court Commissioner

[¶ 15] TJS contends that the affidavit contains insufficient information from which the issuing officer could make an independent decision concerning the credibility of CI. We disagree.

[¶ 16] The statements of CI related by Officer Nelson in the affidavit are hearsay. However, we have previously recognized that an affidavit supporting a search warrant may be based on hearsay where there is "a substantial basis for crediting the hearsay." *McCutcheon v. State*, 604 P.2d 537, 543 (Wyo. 1979) (quoting *Jones v. United States*, 362 U.S. 257, [269], 80 S.Ct. 725, [735], 4 L.Ed.2d 697, [707] (1960)).

[¶ 17] We have previously identified several factors that are helpful in assessing the credibility of an informant's hearsay statements contained in an affidavit. An informant's first hand knowledge of the events or conduct which he describes enhances his credibility. *Urbigkit*, ¶ 15.

… even if there is some doubt as to the informant's motives, his detailed description of criminal activity along with his statement that the event was observed firsthand, entitles his "tip" to carry greater weight than it might otherwise.

*Bonsness v. State*, 672 P.2d 1291, 1293 (Wyo. 1983). Statements against penal interest also enhance the credibility of the informant. *Urbigkit*, ¶ 15. They "carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *Bonsness*, 672 P.2d at 1293 (quoting *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, 734 (1971)).

[¶ 18] Temporal proximity should also be considered. Information contained in the affidavit concerning the timeframe of the informant's involvement assists the judicial officer in determining whether the items to be seized are likely to be present at the location described in the warrant. *Guerra v. State*, 897 P.2d 447, 454 (Wyo. 1995). "The general rule is that the facts

and circumstances set forth in an affidavit submitted in support of the issuance of a search warrant should be current and timely so as to indicate that the premises, person, place, or thing to be searched presently contains the fruits or evidence of the crime." *Cordova*, ¶ 21.

[¶ 19] We have also recognized that an affiant's corroboration of facts supplied by the informant increases the credibility of an informant. "If an informant is right about some things, he is more likely right about other things." *Bonsness*, 672 P.2d at 1293 (quoting *Illinois v. Gates*, 462 U.S. 213, [244], 103 S.Ct. 2317, [2335], 76 L.Ed.2d 527, [552] (1983)). It is not necessary that the affidavit reflect verification of all facts presented by the informant. *Urbigkit*, ¶ 15.

When we analyze the above-referenced factors in the context of this case, we are satisfied that the affidavit is adequate to support the issuance of the search warrant. The affidavit reflects that Officer Nelson sought a search warrant based upon hearsay information which he obtained from CI. According to the affidavit, CI admitted using marijuana on several occasions at TJS's residence. The admissions of CI of marijuana use are statements against penal interest. The affidavit reflects CI's firsthand knowledge of the criminal activity. He described the criminal activity with particularity. He identified the participants. He provided Officer Nelson with a description and location of the residence and described with specificity the drug paraphernalia utilized and its location in the residence. He described the amount of marijuana still in the house. All of CI's observations were made in close temporal proximity to the date of the interview with Officer Nelson and execution of the search warrant.

[¶ 21] The affidavit reflects that Officer Nelson did not rely solely on the information provided by CI. He corroborated much of the information. He located the residence. He confirmed that TJS lived there. He conducted surveillance the day after his interview with CI. He observed TJS and several other

juveniles arrive and depart TJS's residence near noon on a school day in much the same fashion as described by CI. He obtained the search warrant later that same day. He conducted the search authorized by the warrant the next day. There is sufficient information in the affidavit to support the credibility of CI and establish probable cause.

[¶ 22]  We find no error in the decision of the magistrate to issue the warrant and affirm the decision of the district court.