2007 WY 160

**Robert Allen HOLZHEUSER,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 06–124.**

Supreme Court of Wyoming.

Oct. 11, 2007.

70

Representing Appellant: D. Terry Rogers, Interim State Public Defender; and Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dana J. Lent, Assistant Attorney General. Argument by Ms. Lent.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Robert Allen Holzheuser (Holzheuser), contends that the district court erred in denying his motion to suppress the evidence used against him at trial. He asserts that the affidavit in support of the search warrant was inadequate to justify its issuance. Holzheuser also contends that the evidence presented at trial is insufficient to sustain two of his three convictions. We affirm in part, reverse in part, and remand for resentencing in a manner consistent with this opinion.

## ISSUES

[¶ 2] Holzheuser states these issues:

I. The trial court erred in denying [Holzheuser's] motion to suppress, as the affidavit executed in support of the search warrant was inadequate to establish probable cause to search.

II. There is insufficient evidence to sustain a conviction for possessing a controlled substance precursor with intent to engage in a clandestine laboratory operation or a conviction for conspiracy to engage in a clandestine laboratory operation because the only evidence on these counts was hearsay.

The State essentially conforms its argument to that statement of the issues.

## FACTS AND PROCEEDINGS

[¶ 3]   As background for this case, we include here the statement of facts from a case that arose out of the same facts as those in Holzheuser's case:

In December 2004, Mr. [Norman] Wenger met Robert Holzheuser and allowed him to move into an apartment he was renting in Rawlins, Wyoming. On February 8, 2005, Mr. Wenger was at the apartment when Mr. Holzheuser and two companions arrived. The four individuals smoked methamphetamine together.

That same evening, Rawlins police officer William Hill was conducting surveillance on the apartment in connection with reports from two individuals that they had purchased methamphetamine from Mr. Wenger. Officer Hill observed Keith Nulle drive up to the apartment, go inside for about ten minutes, and then drive away. Officer Hill checked Mr. Nulle's driving record and learned that his license was suspended. Officer Hill pulled Mr. Nulle over, placed him under arrest for driving under suspension, searched him and found methamphetamine inside a cigarette pack he was carrying.

Based on the information that Mr. Wenger had sold methamphetamine to others and the methamphetamine found on Mr. Nulle after leaving Mr. Wenger's apartment, Officer Hill obtained a warrant to search the apartment. He and five other law enforcement officers executed the warrant later that same night. The officers knocked on the apartment door and, when no one responded, they broke down the door. Upon entering the apartment, the officers found four people in the living room, including Mr. Wenger, and arrested them. The officers also found methamphetamine, a mini torch, pipes, a car battery with the caps off hooked to a charger, a bottle of acetone, and other material associated with the manufacture of methamphetamine. Additionally, the officers noticed a strong chemical smell in the apartment.

Detective Mike Picerno was called to the scene. After inspecting the apartment, Detective Picerno was concerned it was being used as a methamphetamine manufacturing laboratory. He contacted the Wyoming Division of Criminal Investigation (DCI), the agency trained and experienced in working with clandestine laboratories. Because of safety concerns, Detective Picerno removed everyone from the premises and secured the apartment. He interviewed Mr. Wenger, who indicated the items found in the apartment belonged to Mr. Holzheuser. Mr. Wenger also stated that he used methamphetamine supplied to him by Mr. Holzheuser in exchange for use of the apartment. He also stated that he, Mr. Holzheuser and the other two individuals had smoked methamphetamine that evening before the police arrived. Subsequent searches of the apartment revealed more items associated with the manufacture of methamphetamine.

Mr. Wenger was charged with one count of conspiring with another to engage in a clandestine laboratory operation in violation of § 35–7–1059(a)(iv) and a second count of aiding another to engage in a clandestine laboratory operation in violation of the same statute. After a two day trial, a jury found Mr. Wenger guilty on both counts. The district court sentenced Mr. Wenger to a term of two to eight years in the state penitentiary on the conspiracy conviction and a term of two to eight years on the aiding conviction with the two terms to be served concurrently.

*Wenger v. State,* 2007 WY 121, ¶¶ 3–7, 163 P.3d 824, 825 (Wyo.2007). The only issue raised in Wenger's case was whether or not two convictions, one for aiding another to engage in a clandestine laboratory, and the other conspiring with that same person to engage in a clandestine laboratory, merged for purposes of sentencing. We held that they did.

[¶ 4]   On February 8, 2005, Rawlins Police Officer William Hill sought a warrant to search an apartment located within his jurisdiction. The affidavit in support of the warrant contained this information:

Over the past three weeks, or so, I, together with other law enforcement officers in the area, have observed numerous

known drug users frequenting apartment # 307 at the Bitter Creek Apartments located at 503 Sage Hills Street in Rawlins, Carbon County, Wyoming. These individuals have been observed entering said apartment, remaining there for short visits of approximately 5–10 minutes and then leaving.

The apartment is under the control of Norman Wenger, a person well-known to Rawlins Police Department officers from numerous contacts over recent years. Information has been provided to your affiant and other law enforcement officers by Chris Garey, an individual recently arrested and convicted of Possession of Controlled Substances—Methamphetamine, that he had purchased his methamphetamine from Norman Wenger.

At approximately 9:05 p.m. tonight, February 8, 2005, as I was on routine patrol driving through the parking lot of the apartment complex at 503 Sage Hills St., I personally observed Keith Nulle walk up to the door of Apartment 307, and knock on the door. Keith Nulle is well-known to your affiant through numerous law enforcement contacts. I lost site of Keith Nulle, but his car was observed to remain in the parking lot by Lt. Eric Ford of the Rawlins Police Department, who watched it, noting that it stayed there for approximately 10 minutes. During this time, we ran a check on Keith Nulle's driver's license and it came back as being suspended.

When Keith Nulle left the apartment, I observed him drive his vehicle past my patrol car. I initiated a traffic stop on the vehicle, and advised him that he was under arrest for driving under suspension. During a search incident to a lawful arrest, a pack of cigarettes was found in the left front pocket of his jacket. Inside the pack of cigarettes was found a white plastic bag bindle containing what appeared to be a small amount of crystallized methamphetamine. The substance in the bindle was tested with a methamphetamine NIK test kit, showing a presumptive positive result for methamphetamine.

Keith admitted that he had been to Norman Wenger's apartment, and claimed that he had found the pack of cigarettes on the ground outside the apartment.

Rawlins Police Department officers are continuing to observe the apartment this evening, and have noted several known drug users entering said apartment, remaining there for a short time of approximately 5–10 minutes and then leaving.

Officer Hill anticipated that the search would reveal the presence of controlled substances, sums of money, packaging materials, scales and drug paraphernalia, and ledgers.

[¶ 5] In fact, many such materials were found in the apartment. Holzheuser was tried before a jury and convicted of: (1) Possession of methamphetamine with intent to deliver; (2) possession of a list of I or II controlled substance precursor with the intent to engage in a clandestine laboratory operation; and (3) conspiring with another to engage in a clandestine laboratory operation.

## DISCUSSION

### Sufficiency of the Affidavit in Support of Search Warrant

[¶ 6] At the conclusion of the hearing on the motion to suppress the fruits of the search warrant, the district court articulated its reasons for denying the motion to suppress, after examining the four corners of the affidavit and hearing the arguments of counsel. The district court did not have the benefit of our decisions in *Rohda* or *Schirber* at the time he considered the motion:

The Court disagrees with both counsel regarding what can and cannot be considered by the issuing magistrate. It is the Court's understanding that the difference between the Wyoming constitution and the federal constitution is that under the Wyoming constitution, only the four corners of the affidavit can be considered for determination on probable cause. Whether or not Judge Eakin had a memory of Chris Garey's recent arrest or not would be immaterial. Whether or not anything additional on the record, any additional information was given to Judge Eakin would also be immaterial. It has to be contained within

the four corners of the affidavit or it cannot justify the search.

It would also have been helpful to the Court had the State responded to the motion and filed a memorandum, as it would have been helpful had the defense filed a memorandum citing the law of Hixson, Page [v. State, 2003 WY 23, 63 P.3d 904], and TJS.

The contents of the first paragraph are not particularly helpful in establishing probable cause. The observation of, quote, numerous known drug users, closed quote, doesn't tell the issuing magistrate much to establish probable cause. However, the information received from Chris Garey, and in particular the information received from Keith Nulle, when added to the overall factual scenario developed by the affidavit of William Hill does establish probable cause that allows the—the judge to issue the search warrant. And the Court will deny the motion to suppress.

### Standard of Review

[¶ 7] We have dealt with issues similar to the one at hand in several of our recent cases, including Rohda v. State, 2006 WY 120, 142 P.3d 1155 (Wyo.2006), and Schirber v. State, 2006 WY 121, 142 P.3d 1169 (Wyo.2006).

In reviewing an affidavit in support of an application for a search warrant, this Court is mindful of the fact that there is a strong preference under the law for law enforcement officers to obtain a warrant instead of engaging in a warrantless search. Cordova v. State, 2001 WY 96, ¶ 11, 33 P.3d 142, 148 (Wyo.2001). Thus, an affidavit comes to this Court with a presumption of validity. TJS v. State, 2005 WY 68, ¶ 10, 113 P.3d 1054, 1057 (Wyo.2005). In order to promote the warrant process, and remembering that affidavits are not normally executed by legal technicians, this Court resolves doubtful or marginal cases in this area in favor of sustaining the warrant. TJS, ¶ 10, 113 P.3d at 1057; Cordova, ¶ 11, 33 P.3d at 148; Hixson v. State, 2001 WY 99, ¶ 6, 33 P.3d 154, 156–57 (Wyo.2001). Ultimately, our duty on review simply is to ensure that the warrant-issuing judicial officer had a substantial basis for concluding probable cause existed. Massachusetts v. Upton, 466 U.S. 727, 728 732–33, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984) (per curiam). Schirber, ¶ 5, 142 P.3d at 1172. See also Rohda, ¶ 4, 142 P.3d at 1158.

### The Warrant–Issuing Judicial Officer's Standard for Determining Probable Cause

[¶ 8] The judicial officer who is presented with an application for a search warrant supported by an affidavit applies a "totality of circumstances" analysis in making an independent judgment whether probable cause exists for the issuance of the warrant. See, e.g., Page, ¶ 9, 63 P.3d at 909; Upton, 466 U.S. at 732, 104 S.Ct. at 2087; and Bonsness, 672 P.2d at 1293. In making that independent judgment, the judicial officer is limited to the four corners of the supporting affidavit. Page, ¶ 9, 63 P.3d at 909. The "totality of circumstances" analysis requires the judicial officer simply "to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238, 103 S.Ct. at 2332; see Bonsness, 672 P.2d at 1293.

The hearsay provider's "veracity" and "basis of knowledge" were the prongs of the "two-pronged test" established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See, e.g., Charles E. Moylan, Jr., Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741 (1974). This Court "never specifically adopted," and in fact rejected "the technical and rigid requirements" set out in Aguilar and Spinelli. Bonsness, 672 P.2d at 1293. In 1983, when the United States Supreme Court in Gates rejected those technical and rigid requirements, it realized, as our Court had, that the "totality of circumstances" approach was more in keeping

with the practical, common sense decision required of the warrant-issuing judicial officer. *Upton,* 466 U.S. at 732, 104 S.Ct. at 2087. The warrant-issuing judicial officer does not measure the affidavit by a "reasonable doubt" standard or a "preponderance of evidence" standard; instead, the measure is that the circumstances set forth in the affidavit must amount to more than a mere suspicion yet need not rise to the level of prima facie evidence of guilt. *Lee v. State,* 2 P.3d 517, 523 (Wyo.2000).

An appropriate set of guidelines for the "totality of circumstances" approach can be derived from United States Supreme Court cases, our Wyoming cases, and the work of respected commentators who have reviewed federal and state case law in this area. The judicial officer deciding whether probable cause exists relies on information coming to him from the outside world. The primary source of that information is a law enforcement officer who is applying for the warrant and has signed under oath an affidavit in support of the application. The affiant law enforcement officer may include in his affidavit the raw data of his own sense perception, that is, what he saw, heard, or smelled firsthand. This firsthand information constitutes the affiant's basis of knowledge-how he acquired his information. From affiant's firsthand information, the judicial officer may draw conclusions about the existence or not of probable cause. With respect to the affiant's veracity or reliability, the judicial officer relies on the affiant's oath, with its sanctions of perjury, which is an integral part of the affiant's affidavit.

Frequently, the affiant includes in his affidavit information acquired from secondary sources in the persons of other law enforcement officers or confidential informants. As in the case of the primary source affiant, so in the case of the secondary source person, the judicial officer must know both that person's veracity or reliability and basis of knowledge. Because the secondary source person is not before the judicial officer and has not taken an oath, the judicial officer must have a reasonable substitute for an oath in order to be satisfied with the veracity or reliability of the secondary source person. When the secondary source person is a law enforcement officer, courts hold that such an officer is presumed truthful or reliable and, therefore, no special showing of veracity or reliability is necessary. That rule applies not only to law enforcement officers in the same organization as the affiant, but also to those in different organizations at local, state, or federal levels. When the secondary source person is a confidential informant, the veracity or reliability requirement is usually met by the recitation in the affiant's affidavit by either the primary source affiant or the secondary source law enforcement officer of previous instances in which the law enforcement officer obtained information from the confidential informant that led to arrests or convictions. In the absence of such a recitation, an acceptable substitute recognized by courts is the confidential informant's admission of activities against his penal interests contained in the information provided. With respect to the secondary source person's basis of knowledge, the affiant's affidavit must contain the raw data of that person's sense perception—what that person saw, heard, or smelled firsthand. It is from that secondary source's firsthand knowledge that the judicial officer will be able to draw conclusions about the existence or not of probable cause. If the affidavit fails to show how the secondary source person acquired his information, courts have applied the notion of "self-verifying detail" to cure such a failure. Simply stated, the secondary source person's information is considered "self-verifying" if it describes the warrant-target's criminal activity in such sufficient detail that the judicial officer reasonably may know that he is relying on information more substantial than a casual rumor or an accusation based merely on general reputation.

*Rohda,* ¶¶ 5–8, 142 P.3d at 1158–60; *Schirber,* ¶¶ 6–8, 142 P.3d at 1172–73; also see *Abeyta v. State,* 2007 WY 142, ¶¶ 9–11, 167 P.3d 1, 6–7 (Wyo.2007).

### Analysis

[¶ 9] As was the case in *Rohda* and *Schirber,* mindful of this standard of review

and of the guidelines for the "totality of circumstances" approach, we embark on our review as to whether or not the warrant-issuing circuit court judge had a substantial basis in the affidavit to make a practical, common sense determination that there was a fair probability that evidence of a crime would be found on Wenger's and Holzheuser's residential property.

[¶ 10] A lengthy discussion is not needed here. The affidavit is quite short and is set out in its entirety above. The district court's analysis was understandably brief, particularly in light of the parties' lack of development of the issue below. We agree with the ultimate conclusion of the issuing magistrate, and that of the district court. There was sufficient evidence for the magistrate to conclude that as a matter of practicality and common sense, given all the circumstances set forth in the affidavit before her, including the veracity and basis of knowledge of persons supplying hearsay information, there was a fair probability that contraband or evidence of a crime would be found in a particular place, i.e., the apartment shared by Holzheuser and Wenger.

## SUFFICIENCY OF THE EVIDENCE

**Standard of Review**

[¶ 11] In addressing a claim of insufficiency of the evidence, we must determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. When considering a claim of the sufficiency of the evidence, we review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not re-weigh the evidence nor will we re-examine the credibility of the witnesses. *Lopez v. State*, 2006 WY 97, ¶ 6, 139 P.3d 445, 450 (Wyo.2006).

**The Evidence—Possession of Precursors**

[¶ 12] Holzheuser contends that the evidence is insufficient to sustain his conviction for possessing a controlled sub-

stance precursor with intent to engage in a clandestine laboratory operation or a conviction for conspiracy to engage in a clandestine laboratory operation because the only evidence on these counts was hearsay evidence. He does not challenge the sufficiency of the evidence with respect to his conviction for possession of a controlled substance with intent to deliver. We note here, as well, that Holzheuser was found not guilty with respect to a fourth charge, possession of laboratory equipment or supplies with intent to engage in a clandestine laboratory operation.

[¶ 13] At the time Holzheuser committed his crimes, Wyo. Stat. Ann. § 35–7–1059 (LexisNexis 2003) provided:

(a) **It is unlawful for any person to knowingly or intentionally:**

(i) **Possess a List I or II controlled substance precursor with the intent to engage in a clandestine laboratory operation;**

(ii) Possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation;

(iii) Sell, distribute or otherwise supply a List I or II controlled substance precursor, laboratory equipment or laboratory supplies knowing it will be used for a clandestine laboratory operation;

(iv) **Conspire with or aid another to engage in a clandestine laboratory operation.**

(b) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than twenty (20) years, a fine of not more than twenty-five thousand dollars ($25,000.00), or both.

(c) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both if the judge or jury also finds any one (1) of the following conditions occurred in conjunction with that violation:

(i) Illegal possession, transportation or disposal of hazardous or dangerous material or while transporting or causing to be transported materials in furtherance of a

clandestine laboratory operation, there was created a substantial risk to human health or safety or a danger to the environment;

(ii) The intended laboratory operation was to take place or did take place within five hundred (500) feet of a residence, business, church or school; or

(iii) Any phase of the clandestine laboratory operation was conducted in the presence of a person less than eighteen (18) years of age.

(d) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than forty (40) years, a fine of not more than one hundred thousand dollars ($100,-000.00), or both if the judge or jury also finds any one (1) of the following conditions occurred in conjunction with that violation:

(i) Use of a firearm;

(ii) Use of a booby trap. [Emphases added.]

[¶ 14] The jury was instructed that Ephedrine, Hydriotic acid, and Pseudoephedrine are List I controlled substance precursors. Wyo. Stat. Ann. § 35–7–1058(a)(vi)(H), (O), and (KK) (LexisNexis 2007). The jury was also instructed that Acetone, Hydrochloric acid and Iodine were List II controlled substance precursors. Wyo. Stat. Ann. § 35–7–1058(a)(vii)(B),(E), and (F) (LexisNexis 2007). The testimony at trial is clear, and Holzheuser does not disagree, that all of these precursors were found collected together in a box that Wenger and Holzheuser had access to, inasmuch as it was found in the apartment in which they resided.

[¶ 15] In *Longstreth v. State,* 832 P.2d 560, 562–566 (Wyo.1992), the crime at issue was burglary, and we held that hearsay evidence admitted for a purpose other than to prove the matter stated therein could not be bootstrapped to suffice as evidence to prove an element of the crime of burglary (the unlawful entry element). Holzheuser contends that the only evidence that tied him to the precursors was hearsay evidence from police officers as to what Wenger told them.

[¶ 16] A significant source of the evidence that a clandestine lab operation was being conducted in Wenger's apartment, which he shared with Holzheuser as a kind of co-tenant, was that many of the materials and instruments used in a clandestine lab were found collected together in a single box. As noted above, in the *Wenger* case, Wenger testified that the items in the precursor box belonged to Holzheuser. However, at Holzheuser's trial, he did not remember very much, but he attributed the precursor box as belonging to James Tremble.[1] However, he also conceded that when first asked, he placed possession with Holzheuser, although he claimed that that was a mistake on his part. Wenger's explanation was that, when he was asked the question, he was searching for a name and just came up with the wrong one—*i.e.,* he meant to say Tremble, but mistakenly said Holzheuser. In sum, Holzheuser contends that the only evidence admitted at trial on the subject of Holzheuser's possession of clandestine lab precursors was hearsay testimony from police officers to whom Wenger gave statements. As such, he continues, that evidence cannot be used for the truth of the matter asserted and, thus, there is no evidence of Holzheuser's possession of the precursors.

[¶ 17] Holzheuser's contention that there is insufficient evidence of his possession of the precursors depends entirely upon our holding in *Longstreth,* and we conclude that case does not directly apply to the circumstances of this case. Here, Wenger did incriminate Holzheuser in his statements to the police. Although he tried to change his story at Holzheuser's trial, he did not change it entirely. To some extent, he appeared to incriminate James Tremble instead, but to some extent he indicated that he did not really know who brought the precursors into the apartment. The testimony was uncontradicted that Wenger and Holzheuser lived in the apartment and as a matter of circumstance, it was a fair inference that the precursors belong to both Holzheuser and Wenger.

1. Apparently none of Wenger's statements were tape recorded, so the memories of the officers who questioned Wenger had to substitute for what he actually said during the questioning.

### The Evidence—Conspiracy

[¶ 18] The conspiracy is a different matter. It is unclear to us that the State even attempted to prove a conspiracy. The crime of conspiracy is defined in Wyo. Stat. Ann. § 6–1–303 (LexisNexis 2007). Also see Wyo. Stat. Ann. § 35–7–1042 (LexisNexis 2007); *Palato v. State*, 988 P.2d 512, 515 (Wyo.1999). In the opening statement, the alleged conspiracy is not mentioned at all by the prosecutor. Only the conclusion that there was a conspiracy between Wenger and Holzheuser is mentioned in closing. In the State's brief we do not find references to the transcript where the evidence of conspiracy is to be found. We have searched the record and do not perceive the evidence presented at trial as sufficient to sustain the jury's conclusion that Wenger and Holzheuser entered into a conspiracy, even in light of our adoption of the unilateral approach to conspiracy. We have searched the record for any evidence of the central element of conspiracy—to agree with one or more persons to commit a crime—and there is no such evidence whether hearsay or otherwise. For this reason we conclude that the evidence is not sufficient to sustain the conviction for conspiracy.

### CONCLUSION

[¶ 19] Holzheuser's conviction for possession of methamphetamine with intent to deliver and his conviction for possession of a List I or List II precursor with intent to engage in a clandestine laboratory are affirmed. The conviction of conspiracy to engage in a clandestine laboratory is reversed. The case is remanded to the district court with directions to dismiss Count IV of the information and to resentence Holzheuser accordingly.