2009 WY 27

**Mary J. MUELLER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0057.

Supreme Court of Wyoming.

Feb. 26, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Appellant, Mary J. Mueller, was convicted by a jury of felony possession of methamphetamine, which police found while executing a search warrant at her residence. On appeal, Mueller challenges the district court's denial of her pre-trial motion to suppress the methamphetamine evidence, contending the affidavit supporting the issuance of the search warrant failed to establish probable cause.  We affirm.

## ISSUE

[¶ 2]   Mueller phrases the issue as follows:

Did the trial court err as a matter of law by refusing to suppress the evidence obtained pursuant to a search warrant that was deficient on its face due to omissions in the supporting affidavit?

## FACTS

[¶ 3]   On April 18, 2007, Jamie McKim reported that her white four-door Mercury Sable, bearing Wyoming license plate number 9–231B, had been stolen from her place of employment in Worland, Wyoming.  Later that evening, law enforcement officers spotted the stolen car.  After a brief chase, police found the vehicle abandoned on North 15th Street and discovered two individuals hiding nearby.

[¶ 4]   One of the individuals arrested, Alfred Martinez, reported that Joey Costalez had given him the car earlier that day.  Martinez stated that Costalez was his cousin and that Costalez lived in the area where they had ditched the car.  Thereafter, police returned the vehicle to McKim, who reported several items missing, including a car seat, an iPod, and some key chains.

[¶ 5]  The next day, Officer Horath of the Worland Police Department spoke with two individuals who lived in the vicinity of 809 N. 15th Street.  Both individuals reported seeing two Hispanic men unloading plastic boxes containing clothing from a white four-door sedan the previous night and inserting the boxes through a window into the north-side basement apartment at 809 N. 15th Street.  They described one of the men as "heavy set" and identified the other man as Joey Costalez.

[¶ 6]  On April 19, 2007, Officer Horath sought and obtained a search warrant for the north-side basement apartment at 809 N. 15th Street, which was leased to Mueller.  While executing the search warrant, law enforcement officers discovered methamphetamine as well as other drug-related items inside the apartment.  Mueller was charged with one count of unlawful possession of a controlled substance, a felony, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii).  She filed a motion to suppress the evidence obtained from the search of her apartment, asserting that the affidavit underlying the search warrant was insufficient to establish probable cause.  The district court denied that motion.

[¶ 7]  Following a trial on November 13, 2007, a jury found Mueller guilty on the charged offense.  The district court sentenced Mueller to serve a term of incarceration of four to five years, but suspended execution of that prison sentence in favor of a split sentence consisting of one year in county jail followed by four years of supervised probation.  This appeal followed.

## DISCUSSION

*Standard of Review*

[¶ 8]  On this issue, we have said:

In reviewing an affidavit in support of an application for a search warrant, this Court is mindful of the fact that there is a strong preference under the law for law enforcement officers to obtain a warrant instead of engaging in a warrantless search.  Thus, an affidavit comes to this Court with a presumption of validity.  In

order to promote the warrant process, and remembering that affidavits are not normally executed by legal technicians, this Court resolves doubtful or marginal cases in this area in favor of sustaining the warrant.  Ultimately, our duty on review simply is to ensure that the warrant-issuing judicial officer had a substantial basis for concluding probable cause existed.

*Schirber v. State,* 2006 WY 121, ¶ 5, 142 P.3d 1169, 1172 (Wyo.2006) (internal citations omitted).

*Analysis*

[¶ 9]  Mueller contends, as she did below, that the search warrant is constitutionally infirm under Art. 1, § 4 of the Wyoming Constitution [1] because the affidavit submitted by Officer Horath fails to contain sufficient information to support the judicial officer's finding of probable cause.  The existence of probable cause justifying the issuance of a search warrant involves a twofold finding.  First, the factual situation described in the affidavit must be sufficient to cause a reasonably cautious person to believe that a crime was being committed or that one had been committed.  Second, there must be an adequate showing that the fruits of the crime or the evidence thereof are in the structure or area sought to be searched.  *Bouch v. State,* 2006 WY 122, ¶ 15, 143 P.3d 643, 648 (Wyo.2006).  We previously summarized the standard for a warrant-issuing judicial officer's probable cause determination:

The judicial officer who is presented with an application for a search warrant supported by an affidavit applies a "totality of circumstances" analysis in making an independent judgment whether probable cause exists for the issuance of the warrant.  *See, e.g., Page [v. State,* 2003 WY 23], ¶ 9, 63 P.3d [904,] 909 [Wyo. 2003]; *[Massachusetts v.] Upton,* 466 U.S. [727,] 732, 104 S.Ct. [2085,] 2087[, 80 L.Ed.2d 721 (1984) (per curiam) ]; and *Bonsness [v. State ],* 672 P.2d [1291,] 1293 [ (Wyo. 1983) ].  In making that independent judgment, the judicial officer is limited to the four corners of the supporting affidavit.

1.  Art. 1, § 4 provides that "no warrant shall issue but upon probable cause, supported by

affidavit, particularly describing the place to be searched or the person or thing to be seized."

*Page,* ¶ 9, 63 P.3d at 909. The "totality of circumstances" analysis requires the judicial officer simply "to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." [*Illinois v.*] *Gates,* 462 U.S. [213,] 238, 103 S.Ct. [2317,] 2332[, 76 L.Ed.2d 527 (1983) ]; *see Bonsness,* 672 P.2d at 1293.

*Rohda v. State,* 2006 WY 120, ¶ 5, 142 P.3d 1155, 1158–59 (Wyo.2006); *see also Holzheuser v. State,* 2007 WY 160, ¶ 8, 169 P.3d 68, 74 (Wyo.2007); *Abeyta v. State,* 2007 WY 142, ¶ 11, 167 P.3d 1, 7 (Wyo.2007); *Crackenberger v. State,* 2006 WY 162, ¶ 7, 149 P.3d 465, 470 (Wyo.2006). We also said that the "judicial officer does not measure the affidavit by a 'reasonable doubt' standard or a 'preponderance of evidence' standard; instead, the measure is that the circumstances set forth in the affidavit must amount to more than a mere suspicion yet need not rise to the level of prima facie evidence of guilt." *Rohda,* ¶ 6, 142 P.3d at 1159 (citing *Lee v. State,* 2 P.3d 517, 523 (Wyo.2000)).

[¶ 10] With these principles in mind, we turn to Mueller's complaint regarding the adequacy of the search warrant affidavit. The affidavit reads as follows:

COMES NOW, Lawrence B. Horath, the Affiant herein, being of lawful age, under oath, deposes and states as follows:

1. That the Affiant is a duly sworn, qualified and acting Police Officer for the City of Worland, Washakie County, Wyoming.

2. On the 19th day of April, 2007[,] I conducted interviews of two persons who live in the vicinity of 809 N. 15th, City of Worland, County of Washakie, State of Wyoming. Both of these subjects are known to me from previous contacts, and both are at least 18 years of age.

3. Subject one, the older of the two persons, stated that at approximately 19:15 hours on the 18th day of April[,] 2007, two Hispanic male subjects were observed on the North side of the apartment building located at 809 N. 15th [S]treet, City of Worland, County of Washakie, unloading plastic boxes full of clothing (subject one said clothing was visible hanging out the sides of the boxes) from a white 4 door sedan through a window into the North side basement apartment of the building.

4. Subject one stated the heavy set Hispanic male has been frequenting this apartment during [the] previous week. The other Hispanic male subject was positively identified by subject one as "Joey Costalez", who is known to law enforcement as Larry Joseph Costalez.

5. Subject two stated that between the hours of 19:15 and 19:30 on the 18th day of April, 2007, two Hispanic male subjects, one identified as heavy set with very short hair, and "Joey Costalez" were observed unloading plastic boxes of clothing from a white 4 door passenger car, which he described as a Ford Taurus or similar Ford Motor Company model, with Wyoming 9 county plates (subject two did not note the balance of the number) into a window of the North basement apartment at 809 N. 15th [S]treet, City of Worland, County of Washakie[,] State of Wyoming.

6. A white 4 door sedan bearing Wyoming passenger plate 9–231B was reported and signed as stolen by its owner, Jamie Kay McKim on the 18th day of April, 2007. The stolen car was reported as a 1999 Mercury Sable, 4 door sedan white in color.

7. During the late evening hours of 04–18–07, the vehicle was located in Worland. After a brief pursuit involving W.P.D. Sgt. Tom Brase, the occupants ditched the car North of Yellowstone Avenue on North 15th street. Two subjects were located hiding in different locations within a 100 yard radius of the apartment building at 809 N. 15th [S]treet, City of Worland. Alfred Martinez[,] who was subsequently arrested, admitted to Sgt. Brase that Joey Costalez had given the car to him and Felipe Andreano earlier in the day, and that Joey Costalez was in fact his, Alfred Martinez'[s] cousin. He also stated Joey lived not far from where they had ditched the car.

8. On the 19th of April 19[sic], 2007, the owner of the stolen car, Jaime [sic] McKim came to the L.E.C. and filled out an affidavit including a list of items which were missing from her vehicle when it was returned to her. A copy of that affidavit is attached to this document.

McKim's affidavit, which was attached to and incorporated by reference into Officer Horath's affidavit, states in pertinent part: [2]

That while in Washakie County, City of Worland, Wyoming, on or about the 18 day of April, 2007:

At about 3:57 pm I came back to carquest from my lunch break. I parked my car in the parking lot & left my keys in the car. I had been at work for about 5 to 10 min. when Joe Costalez walked in & asked me where the bonde was. I showed him where it was he said, "thank you, I was just checking some prices," & as he was walking out I noticed Alfie at the doorway & then the two of them walked around the front of Carquest. I got off work about 5:40 pm & when I got in my car my keys were gone. So I called T.J. Garay for a ride. I got home & called the police to report that my keys were stolen. Around 7:00 pm T.J. & I went to Kraft's to put gas in his pickup & I could see that my car was still there. We went to eat at T.J.'s mom's house & by the time we got back at about 8:00 pm my car was gone. T.J. called the police & I went to tell them what happened about my car. When we left we drove around all the places it might be & could not find it. So I went home & later on T.J. called & told me what happened. Later on the police contacted me about my car & said I could go get it so T.J. brought it home. When I got my car back these were the items missing, my car seat & ipod & my key chain which had on it T.J.'s chevy truck key, a red key chain flashlight, a key chain that says Jamie on it.

[¶ 11] Mueller first complains that the factual information contained in the affidavit fails to provide a nexus between the evidence sought (McKim's stolen property) and the place to be searched (her apartment). We disagree. The affidavit contains information regarding the theft of McKim's white, four-door 1999 Mercury Sable sedan, bearing Wyoming license plate number 9–231B, and her personal items that were in the vehicle. The affidavit discloses that the car was stolen sometime after 7:00 p.m. on April 18, 2007. A few hours earlier, Joey Costalez and "Alfie" were observed in the area from which the car was stolen. At approximately 7:15 to 7:30 p.m., a vehicle matching the description of McKim's stolen car was spotted parked outside an apartment building located at 809 N. 15th Street. Joey Costalez and a heavy-set Hispanic male were observed removing plastic boxes from the vehicle and placing those boxes in the north-side basement apartment.[3] Costalez's possession of the stolen vehicle was confirmed by Alfred Martinez, who reported to police that Costalez had given him the stolen vehicle that day.

[¶ 12] Based on the totality of the information contained in the affidavit, the warrant-issuing judicial officer had a substantial basis for his practical and common sense determination that there was a fair probability that Costalez had engaged in criminal activity—the theft of McKim's car and the items contained therein. The judicial officer also had a substantial basis from which to reasonably conclude that evidence of Costalez's criminal activity (McKim's personal property) could be found in the basement north-side apartment located at 809 N. 15th Street. Simply put, we find that the affidavit provides a sufficient factual nexus between the criminal activity, the evidence to be seized, and the place to be searched.

[¶ 13] Mueller also contends the affidavit is insufficient because it fails to establish the reliability of the unnamed informants, "Subject one" and "Subject two," who provided the information detailed in paragraphs three through five. When an affidavit contains statements from an infor-

---

2. We have chosen not to expressly identify punctuation and other immaterial errors in the affidavit.

3. Although the affidavit mentioned that clothing was observed in the plastic boxes, this does not preclude the presence of the smaller items reported missing by McKim.

mant, a secondary source, sufficient facts must be presented such that the warrant-issuing judicial officer can make an independent judgment as to the informant's credibility, veracity, reliability, and basis of knowledge in determining the existence of probable cause. *Rohda,* ¶ 8, 142 P.3d at 1159–60. In deciding whether information from an informant is sufficient to establish probable cause, courts have generally drawn a distinction between information from common citizens and information from informants who regularly supply information to the police. *Borgwardt v. State,* 946 P.2d 805, 807 (Wyo.1997). Citizen informants, in contrast to police informants, are ordinarily deemed to be presumptively reliable sources of information. *Id.; see also Crackenberger,* ¶ 10, 149 P.3d at 470.

[¶ 14] In this case, there is no indication in the affidavit that the unnamed informants were anything other than common citizens who, when approached by Officer Horath, were willing to answer questions regarding what they had observed in the area the previous evening. As mentioned above, citizen informants are generally entitled to a presumption of reliability. This is particularly true here because the informants' identities were known to Officer Horath and, as such, they were subject to possible criminal prosecution if they provided false information. *Crackenberger,* ¶ 10, 149 P.3d at 470–71.

[¶ 15] Beyond this presumption of reliability, we also note the information in the affidavit reflects first-hand observations of the informants and is specific and detailed. Both informants provided similar descriptions of the individuals observed taking items from the car and placing them in the apartment. They each independently identified Joey Costalez as one of the individuals removing items from the car. The identification of Costalez is significant, as Costalez was seen in the area where McKim's vehicle had been stolen and Alfred Martinez reported that Costalez had given him the stolen vehicle. Additionally, the informants' description of the vehicle at the residence matched the description of McKim's stolen car. One of the informants specifically described the ve-

hicle as "a white 4 door passenger car ... a Ford Taurus or similar Ford Motor Company model, with Wyoming 9 county plates." The specificity of this information, coupled with the fact that all of the descriptive information given by the informants relating to the vehicle and the identification of Costalez was corroborated by other individuals, strongly indicates the informants were reliable.

## CONCLUSION

[¶ 16] We hold that the affidavit of Officer Horath, when read in its entirety, provided a substantial basis for the warrant-issuing judicial officer's finding of probable cause. Accordingly, we find no error in the district court's denial of Mueller's motion to suppress. Affirmed.