# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 46

APRIL TERM, A.D. 2014

*April 9, 2014*

SAMUEL P. SNELL,

**Appellant**
**(Defendant),**

v.                                                S-13-0164

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Diane E. Courselle, Director, and Grant Smith of the Defender Aid Program, University of Wyoming College of Law. Argument by Mr. Smith.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey Pope, Assistant Attorney General; Caitlin Young, Assistant Attorney General. Argument by Ms. Young.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellant Samuel P. Snell was arrested and charged with driving while under the influence of alcohol.  He filed a motion to suppress the results of his blood alcohol concentration (BAC) test, claiming that the affidavit supporting the search warrant authorizing his blood to be taken for testing failed to demonstrate probable cause.  The motion was denied, and Appellant was subsequently convicted by a jury of driving with a BAC of at least 0.08% for a fourth or subsequent time in ten years, a felony.  He now challenges the district court's denial of the motion to suppress as well as the sufficiency of the evidence to support his conviction.  We find that the affidavit in support of the search warrant is deficient because it contains bare conclusions.  Consequently, we must hold that the district court erred in denying Appellant's motion to suppress the results of his BAC test.  We reverse.

## ISSUE

[¶2]   The dispositive question before us is the sufficiency of the affidavit that resulted in the issuance of a search warrant authorizing Appellant's blood to be taken for testing.  For that reason, we restate the controlling issue as follows:[1]

> Did the affidavit supporting the application for a warrant to draw Appellant's blood contain sufficient information for a judicial officer to make an independent judgment that there was probable cause that Appellant had been driving while intoxicated?

## FACTS

[¶3]   In the early evening hours of July 7, 2012, Mr. Svalina was working in his yard in rural Campbell County when he observed a pick-up truck traveling down the county road near his home at a high rate of speed, lose control, and roll over.  From approximately 275 yards away from the wrecked vehicle, he saw someone crawl out of the passenger window and run from the scene.  Mr. Svalina could not identify the fleeing person at that distance.

[¶4]   While her husband was outside surveying the accident scene, Mrs. Svalina called law enforcement to report the incident, and Campbell County sheriff's deputies arrived shortly thereafter.  Mr. Svalina described what he had seen of the driver and accident to the officers.  After securing the scene and determining that the individual who ran from

---

[1] Appellant presents an additional issue concerning the sufficiency of the evidence to convict him of one count of felony driving under the influence of alcohol.  Because we find the district court erred in denying Appellant's motion to suppress the BAC test results, we need not address the ancillary issue.  *See Bouch v. State*, 2006 WY 122, ¶ 29, 143 P.3d 643, 653 (Wyo. 2006).

1

the scene was the only occupant of the vehicle, the deputies began to search for the driver who had fled.[2] They checked the truck's license plate and then went to the home of the owner, Cynthia Snell, who lived roughly a mile and a half away.

[¶5] Ms. Snell believed that the truck was parked in her garage, but told officers that her son, the Appellant, could have taken it, even though he was only permitted to operate vehicles with an ignition interlock device, which the truck did not have.[3] Officers continued to look for the driver and eventually called a canine unit to assist. Approximately an hour into the search (and about two hours after the accident), an officer spotted Appellant near Ms. Snell's residence. He matched the description Mr. Svalina had given. The investigating officer, Deputy Gibson of the Campbell County Sheriff's Department, observed that Appellant smelled strongly of alcohol, slurred his speech, had torn clothing, and had fresh cuts and blood on his face and arms. Appellant denied driving the truck, explaining that his torn clothes and injuries had instead resulted from a fall while he was tending horses.

[¶6] Appellant consented to field sobriety tests, but he was unable to complete two of the tests and failed the remaining three. Consequently, he was arrested and taken to the Campbell County detention center.[4] There he was provided with an explanation of Wyoming's implied consent laws and asked to submit to a breathalyzer test. He refused.

[¶7] Deputy Gibson sought and obtained a search and seizure warrant to obtain Appellant's blood, breath and/or urine for testing to determine his alcohol concentration. Approximately four hours after the accident, Appellant's blood was drawn and tested as permitted by the warrant. The testing determined Appellant's BAC to be 0.21%.

[¶8] Appellant was charged with one count of driving with an alcohol concentration of 0.08% or more, a fourth or subsequent offense within ten years, in violation of Wyo. Stat. Ann. § 31-5-233(b)(i)(e), which is a felony. He filed a motion to suppress the blood alcohol test, asserting that the search warrant was based upon an affidavit containing conclusory statements, and that it failed to establish probable cause that he was driving the vehicle at the time of the accident. The district court denied the motion.

[¶9] With the motion denied, the case proceeded to trial. Appellant testified in his own defense, and for the first time admitted that he had been driving the truck at the time of

---

[2] Officers searching the truck at the scene found a Bud Light beer bottle and a Coors light can in the backseat (or rear area) of the vehicle.

[3] Earlier that day, Appellant had been released from the Campbell County jail after serving a sentence on a previous DWUI charge.

[4] The officer informed Appellant that he was being arrested for, *inter alia*, driving while intoxicated, leaving the scene of a crash, and driving with a suspended license.

the accident. However, he claimed that he consumed beer and whiskey[5] he had purchased and transported in the vehicle only after the accident; that is, he grabbed the alcohol when he fled and consumed it all sometime before being found by law enforcement near his mother's house. In other words, he testified that he became intoxicated after he was no longer driving and was therefore not guilty of the offense with which he was charged. The jury found Appellant guilty nonetheless, and the district court sentenced him to incarceration for not less than two nor more than six years. This appeal was timely perfected.

## STANDARD OF REVIEW

[¶10] Our standard of review for evaluating the sufficiency of an affidavit to support the issuance of a search warrant under Article 1, Section 4 of the Wyoming Constitution is *de novo. TJS v. State,* 2005 WY 68, ¶¶ 9-10, 113 P.3d 1054, 1057 (Wyo. 2005). While we view a search warrant affidavit in its totality through a commonsense and realistic lens, our review is ultimately constrained by the information included within its four corners. *Id.*; *see also Rohda v. State,* 2006 WY 120, ¶¶ 3-4, 142 P.3d 1155, 1158 (Wyo. 2006). Because our Constitution requires all information relied upon by the issuing judicial officer to determine probable cause to be included in the affidavit, deference is unnecessary because we are in the same position to assess the information as the issuing magistrate or judge.

[¶11] We have also emphasized that an affidavit supporting a search warrant is presumed valid, and that it is tested by a less vigorous standard than that for determining admissibility of evidence at trial. *Bouch v. State*, 2006 WY 122, ¶ 6, 143 P.3d 643, 646 (Wyo. 2006). In order to promote the use of warrants and recognizing that affidavits are not normally prepared by attorneys or legal technicians, this Court will resolve doubtful or marginal cases in favor of the validity of the warrant. *Id*

## DISCUSSION

[¶12] Article 1, Section 4 of the Wyoming Constitution protects its citizenry against unreasonable searches and seizures.[6]

---

[5] Appellant testified that he purchased a six-pack of Budweiser cans and a pint of Jack Daniels whiskey earlier that day.

[6] The Fourth Amendment to the United States Constitution also protects the people against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by ***Oath or affirmation***, and particularly describing the place to be searched, and the persons or things to be seized.

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by ***affidavit***, particularly describing the place to be searched or the person or thing to be seized.

Wyo. Const. art. 1, § 4 (emphasis added). The requirement that the probable cause supporting the issuance of a search warrant must be reflected in an affidavit is significant to our analysis. "Because the Wyoming Constitution, unlike the Fourth Amendment, requires an affidavit, rather than just an oath or affirmation, we have held that sufficient factual support for issuance of the warrant must be found within the affidavit." *Bouch*, ¶ 13, 143 P.3d at 648. The requirement of an affidavit fortifies Wyoming citizens' rights by creating a permanent written record. *Smith v. State*, 2013 WY 122, ¶ 14, 311 P.3d 132, 136 (Wyo. 2013).

[¶13] The affidavit must therefore provide sufficient information within its four corners for a judicial officer to make an independent judgment that there is probable cause to issue the warrant based upon the totality of the circumstances. *Bouch*, ¶ 13, 143 P.3d at 648. "The totality of circumstances analysis requires the judicial officer simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lefferdink v. State*, 2011 WY 75, ¶ 14, 250 P.3d 173, 177 (Wyo. 2011) (quotation marks omitted). Thus, it is necessary that the affidavit include some underlying facts, rather than bare conclusions of the affiant.[7]

[¶14] With these principles in mind, we turn to the *Affidavit for DWUI and Seizure Warrant* at issue, which we set forth in its entirety for ease of reference:

---

U.S. Const. amend. IV (emphasis added). The use of the word "affidavit" in Article 1, Section 4 of the Wyoming Constitution, rather than the words "oath or affirmation" that appear in the Fourth Amendment to the United States Constitution, means that the former provides greater protection than the latter. *See Crackenberger v. State,* 2006 WY 162, ¶ 7, 149 P.3d 465, 470 (Wyo. 2006). Because the narrow issue presently before us concerns the sufficiency of the affidavit in support of the search warrant, we confine our analysis accordingly.

[7] *Bouch*, ¶ 13, 143 P.3d at 648 ("The affidavit in support of the warrant, therefore, must include more than bare conclusions of the affiant."); *Abeyta v. State*, 2007 WY 142, ¶ 16, 167 P.3d 1, 8 (Wyo. 2007) ("[T]he law does not require that an affidavit be absolutely devoid of conclusory statements; rather, the law requires that the affidavit must include more than bare conclusions of the affiant." (quotation marks and emphasis omitted)); *Schirber v. State*, 2006 WY 121, ¶ 7, 142 P.3d 1169, 1173 (Wyo. 2006) ("Some underlying factual information, as opposed to mere suspicions or conclusory statements, must be supplied.").

# AFFIDAVIT FOR DWUI AND SEIZURE WARRANT

I, the Undersigned, a certified peace officer in and for ☐ the State of Wyoming, ☒ County of Campbell, ☐ Municipality of Gillette, arrested **Samuel Paul Snell** (herein after "Driver"),
(Name of Driver)

**71-0309758    Wyoming**, for driving under the influence of alcohol and/or a controlled substance
(Driver's License # and State of Issuance)

in Campbell County Wyoming in violation of W.S. 31-5-233(b), W.S. 31-5-234, or similar statute(s), on the **7** day of **July**, 20**12**.

The Implied Consent Advisement was read to Driver. Driver REFUSED to submit to a blood, breath or urine test for the presence of alcohol or controlled substances.

**FILED FOR RECORD**

## PROBABLE CAUSE FOR ARREST

**JUL 11 2012**

Please submit a concise statement of where, when and why the arrest was made. Use complete sentences.

CLERK OF CIRCUIT COURT
OF THE SIXTH JUDICIAL DISTRICT
CAMPBELL COUNTY

**I had the following reasons for Initial Contact/Stop and Arrest of Driver;**
Driver ran from a traffic crash in which his vehicle rolled on a county road and ended on its side on property not belonging to the driver. Upon contact with driver I detected a strong odor of an alcoholic beverage on the driver's breath. Driver consented to sobriety test

**I observed the following physical conditions of Driver or observations of Driver's Vehicle (Please be specific!):**

☒ Bloodshot/ Watery Eyes
☐ Soiled Clothing
☐ Poor Manual Dexterity
☒ Bruises, Bumps or Scratches
☐ Unusual Actions/ Behavior
☒ Poor Balance

☒ Slurred Speech
☒ Admission of Drinking
☒ Inconsistent Responses
☐ Abusive Language
☐ Unusual Statements
☐ Signs or Complaints of Injury

☒ Odor of Alcohol on Driver/ in Vehicle
☐ Odor of Marijuana on Driver/ in Vehicle
☐ "Cover up" Odors like Breath Sprays
☐ Unusual Odors
☒ Alcohol Containers on Driver/ In Vehicle
☐ Drugs or Drug Paraphernalia on Driver/ in Vehicle

Suspects Statements/Other evidence/explanation of above: Driver statement of having two beers today. Driver denied driving wrecked vehicle and explained cuts and scratches as being caused by falling in the brush. Same with torn shirt

**I requested the following Field Sobriety Test(s) and observed the following results:**

☒ **Horizontal Gaze Nystagmus**
-EYE-
L☒ R☒ Lack of Smooth Pursuit
L☒ R☒ Distinct Nystagmus at Maximum Deviation
L☒ R☒ Onset of Nystagmus Prior to 45 Degrees

☒ **Walk & Turn**
☐ Lost Balance During Instructions
☐ Began Before Instructions Finished
☒ Stops while Walking
☒ Did Not Touch Heel to Toe
☐ Steps Off The Line
☐ Used Arms for Balance
☒ Improper Turn
☐ Incorrect Number of Steps

☒ **One Leg Stand**
☒ Swayed While Balancing
☐ Used Arms to Balance
☐ Hopped
☒ Put Foot Down

☐ **Suspect Refused All Field Sobriety Tests**

Additional Field Sobriety Test(s) Used/Additional Information: Driver failed to complete his ABC's from the letter "C" to the letter "O". Driver stated he could not perform the Rhomberg test.

☐ A Portable Breath Test was obtained from Driver resulting in a _____ % BAC.

I, **Ernest Gibson**, Badge # **17-55** herby request a Warrant pursuant to W.S. 31-6-102(d), based on probable cause as set forth herein, for the search and seizure of Driver's blood, breath and/or urine, with said Warrant to be served and executed upon Driver at any time or location within the jurisdictional boundries of the issuing Court pursuant to W.R.Cr.P. 41(c), as the evidence sought is of a perishable nature. By signing or affixing my signature below, I swear and affirm that I am of the age of majority and that all the forgoing information is true and correct to the best of my knowledge.

**DATED** this **7** day of **July**, 20**12** at **7:53** AM/**PM**

_____
Peace Officer's Signature

STATE OF WYOMING        )
                        )
COUNTY OF CAMPBELL      )

Subscribed and sworn before me, a Notarial Officer, this **2,L** day of **July**, 20 **12**

_____ 17-85
Notarial Officer

My Commission Expires: **04-16-13**

5

[¶15] Appellant complains that the affidavit is too conclusory to pass muster because it does not tell us how Deputy Gibson knew that Appellant was the driver of the vehicle. He asserts that there is a nexus requirement that is not fulfilled by this form affidavit, and that it paints an inadequate picture that does not reflect the actual circumstances of the case. After a solicitous review of controlling case law and the record, we must agree.[8]

[¶16] Probable cause to justify the issuance of a search warrant requires a twofold finding. *See Bouch*, ¶ 15, 143 P.3d at 648. "First, the factual situation must be sufficient to warrant a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed." *Id.* "Second, there must be an adequate showing that the fruits of the crime or the evidence thereof are in the" place to be searched. *Id.* "It is 'necessary that there be established a sufficient nexus between (1) criminal activity, and (2) the things to be seized, and (3) the place to be searched.'" *Id.* (quoting Wayne R. LaFave, *Search and Seizure* § 3.7(d), at 412 (4th ed. 2004)).

[¶17] To establish a nexus between the crime and Appellant, probable cause that he was driving had to be contained within the affidavit, which would also provide a nexus to the thing to be seized (blood or other bodily fluids) and the place to be searched (Appellant's person). The affidavit repeatedly asserts that Appellant was the driver of the vehicle but

---

[8] ***Compare*** *Bouch*, ¶¶ 7-25, 143 P.3d at 646-52 (affidavit in support of search warrant insufficient to establish nexus between the suspected criminal activity and location to be searched, therefore failing to establish probable cause, and warranting suppression of resulting evidence); *Page v. State*, 2003 WY 23, 63 P.3d 904 (Wyo. 2003) (affidavit submitted in support of search warrant did not establish probable cause), *abrogated on other grounds by TJS v. State*, 2005 WY 68, 113 P.3d 1054 (Wyo. 2005); *Hixson v. State*, 2001 WY 99, ¶¶ 5-12, 33 P.3d 154, 156-59 (Wyo. 2001) (affidavit contained insufficient information to give issuing judicial officer substantial basis to independently determine probable cause for issuing search warrant), *abrogated on other grounds by TJS v. State*, 2005 WY 68, 113 P.3d 1054 (Wyo. 2005), ***with*** *Lefferdink*, ¶¶ 8-16, 250 P.3d at 175-78 (affidavit in support of search warrant sufficient); *Mueller v. State*, 2009 WY 27, 202 P.3d 404 (Wyo. 2009) (affidavit provided a judicial officer with a substantial basis to conclude that probable cause existed to issue a warrant); *Abeyta v. State*, 2007 WY 142, 167 P.3d 1 (Wyo. 2007) (affidavit sufficient to support probable cause finding for search warrant); *Holzheuser v. State*, 2007 WY 160, ¶¶ 6-10, 169 P.3d 68, 73-76 (Wyo. 2007) (search warrant supported by probable cause); *Schirber*, ¶¶ 9-20, 142 P.3d at 1177-82 (when read in its entirety, affidavit contained sufficient information to establish a finding of probable cause and thus the issuance of the search warrant); *Crackenberger v. State*, 2006 WY 162, 149 P.3d 465 (Wyo. 2006) (information in affidavit sufficient to support probable cause); *Rohda v. State*, 2006 WY 120, 142 P.3d 1155 (Wyo. 2006) (substantial basis for issuance of search warrant); *TJS v. State*, 2005 WY 68, 113 P.3d 1054 (Wyo. 2005) (affidavit contained sufficient information to support credibility of confidential informant and to establish probable cause); *Urbigkit v. State*, 2003 WY 57, ¶¶ 6-15, 67 P.3d 1207, 1212-17 (Wyo. 2003) (affidavits adequate to support a finding of probable cause sufficient for the issuance of the warrants), *abrogated on other grounds by TJS v. State*, 2005 WY 68, 113 P.3d 1054 (Wyo. 2005); *Kitzke v. State*, 2002 WY 147, ¶¶ 7-12, 55 P.3d 696, 698-701 (Wyo. 2002) (officer's search warrant affidavit constituted probable cause to issue search warrant); *Cordova v. State*, 2001 WY 96, 33 P.3d 142 (Wyo. 2001) (information in affidavit was sufficiently timely to establish probable cause to issue warrant), *abrogated on other grounds by TJS v. State*, 2005 WY 68, 113 P.3d 1054 (Wyo. 2005).

omits any explanation as to how Deputy Gibson or a judicial officer could reach that conclusion. The affidavit creates the impression that Deputy Gibson encountered Appellant at or near the scene within minutes of the accident, and that he saw him abscond from it. Under those facts, there would not be much doubt as to whether Appellant was driving the vehicle, even though he denied doing so.

[¶18] However, that is not what actually occurred. *See* ¶¶ 3-5, *supra*. The judicial officer (the circuit judge issuing the search warrant) had to rely on the deputy's conclusions, which suggest that he saw Appellant driving the vehicle or that he saw him running from it soon after the accident. *See Bouch*, ¶ 16, 143 P. 3d at 648. The judge was not provided with facts that supported Deputy Gibson's conclusion that Appellant was driving when the search warrant was issued. Often these facts are self-evident from the affidavit, as when an officer states that he stopped a vehicle, approached the driver's door, and spoke with the defendant, but they were not in this unusual situation. The judge issuing the warrant could have taken additional testimony to fill in the gaps under Wyoming Rule of Criminal Procedure 41(c),[9] but there is no indication in the record that this was done.

[¶19] A comparison to another probable cause affidavit provided the next day by Deputy Gibson to support Appellant's arrest demonstrates the conclusory nature of the search warrant affidavit. The post-arrest affidavit—which is not on a form—lays out the exact sequence of events which led the deputy to the reasonable conclusion that Appellant was driving:

> Deputy Gibson responded to a reported one vehicle rollover near the intersection of Svalina Road and Rustic Hills Road. Upon arrival, Deputy Gibson observed a black, Chevy Truck positioned in a pasture on its driver side. The truck was unoccupied with the engine running. Area resident, Robert Svalina was present and informed Deputy Gibson of witnessing the truck traveling west on Svalina Road at a high rate of speed. Svalina witnessed the truck sliding sideways, rolling though a barbed wire cattle fence and coming to rest on its driver's side. Svalina approached the truck and observed a white male wearing jeans, a white T-shirt and possibly a ball cap, running away from the truck toward a dry creek bed in a northwestern direction. The male stopped, turned and looked directly at Svalina before continuing to run away from the accident scene. Deputy Gibson conducted a

---

[9] "[T]he judicial officer may require the affiant to appear personally and may examine under oath the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit." W.R.Cr.P. 41(c).

preliminary search and confirmed no other persons w[]ere in the vehicle or the immediate area.

Deputies Gibson and Feddersen along with WHP Trooper Briggs proceeded to the vehicle's registered owner, Cynthia Snell's residence at 162 Rustic Hills Road. Deputy Gibson informed Snell of her registered vehicle being involved in a rollover and Snell commented about the vehicle being in her garage earlier during the day. Deputy Gibson asked Snell who could have possibly taken the vehicle from the residence and Snell replied her son Sam may have however, Sam was released from the Campbell County jail earlier in the morning and has to utilize an ignition interlock to drive. The black Chevy truck does not have an ignition interlock installed. Snell also commented, Sam left earlier in the day with a friend. Snell was informed by Deputy Gibson that law enforcement was looking for the truck's driver who, ran away from the scene of the rollover and if Sam is the alleged driver and returns to her residence to notify the Sheriff's Office because he could possibly be injured. Deputies, along with WHP Trooper Briggs, began patrolling the Rustic Hills area paying special attention to the pastures adjacent to Cynthia Snell's residence.

Believing the alleged driver may be injured; Deputies also summoned a canine unit to establish a track in hopes of locating the alleged driver. A canine search began at approximately 1735 hours, conducted by Corporal Spears and canine Rocky. Deputies Gibson and Feddersen assisted the canine search while Trooper Briggs continued patrolling the Rustic Hills area.

Approximately one hour into the canine search, Trooper Briggs notified the Sheriff's Office Dispatchers of detaining a man matching the alleged driver's description. The male was observed by Trooper Briggs walking in an eastern direction approximately 1/10 mile northwest of Cynthia Snell's residence. Trooper Briggs informed the male of wanting to speak with him however, the male continued to walk away from Briggs at which time; Trooper Briggs crossed a cattle fence and verbally commanded the male to stop. The male was detained until Deputies arrived.

8

Deputies arrived at Trooper Briggs' location and Deputy Gibson was informed by Briggs, the male identified as Samuel Paul Snell, emitted a strong odor similar to that of an alcoholic beverage when speaking to Briggs. Snell wore jeans, a white T-shirt and dark colored croc type shoes. Deputy Gibson observed Snell had various cuts on his arms and bruises on his face. Snell refused medical attention. Snell's T-shirt was torn in several places and contained various dirty spots. Deputy Gibson asked Snell how he received the cuts, bruises and shirt tears and Snell explained they were caused by falling in the brush while out tending to horses.

Deputy Gibson smelled a strong odor similar to an alcoholic beverage emitting from Snell when Snell spoke. Snell's speech was slurred while admitting drinking two beers earlier during the day while at his mom's residence. Snell denied leaving his mother's residence and denied driving her truck. Deputy Gibson asked Snell if he would consent to field sobriety tests and Snell consented. Snell failed to properly perform all sobriety tests conducted by Deputy Gibson to include, Horizontal Gaze Nystagmus, One Legged Stand and Walk and Turn.

. . .

[¶20] We do not mean to suggest that the search warrant affidavit needed to include all of the information contained in the subsequent arrest affidavit. However, some of the underlying factual information supporting Deputy Gibson's conclusion that Appellant had been driving the vehicle was essential to support issuance of the search warrant. *See Schirber*, ¶ 7, 142 P.3d at 1173 (Wyo. 2006) ("Some underlying factual information, as opposed to mere suspicions or conclusory statements, must be supplied.").

[¶21] We note that the search warrant affidavit is on a form that provides an affiant with only a few lines to set out sufficient information for a judicial officer to determine if probable cause exists. While the form may in most cases be adequate, when, as here, the facts are more complicated, an affiant may feel constrained to write within the lines provided and make his or her statements conclusory and lacking in the detail necessary for a judicial officer to evaluate the facts constituting probable cause. We believe that to have been the case here. We do not criticize Deputy Gibson—we have every reason to believe that he thought the affidavit was as complete and candid as space permitted—but it is likely that the form simply did not provide adequate space to explain the unique circumstances that led to the need for a search warrant. We also understand the time

pressures related to the evanescent nature of the evidence – Appellant's blood alcohol concentration was diminishing with each passing minute.

[¶22] Problems with form affidavits in DWUI cases should be alleviated by the relatively recent enactment of a statutory procedure for remotely communicated search warrants in those cases. *See Smith*, ¶ 26, 311 P.3d at 139-40 ("[P]rocedures set forth in Wyo. Stat. Ann. § 31-6-102(d) do comply with the affidavit requirements of Wyo. Const. art. 1, § 4."). We are confident that Deputy Gibson would have provided more information or that the circuit judge would have asked for further details during a telephonic conversation. In either event, it is likely that the record would reflect additional facts supporting the finding that probable cause existed to believe that Appellant was the driver. We can readily see that it did exist in hindsight. Unfortunately, those facts were not contained in the affidavit used to obtain the search warrant which authorized Appellant's blood to be drawn, and we must evaluate its sufficiency at the time the circuit judge issued it, rather than in light of information provided later. A retrospective test would render constitutional protections against unreasonable search and seizure meaningless. The fruit of the search, the BAC test, should for these reasons have been suppressed.

## *Good Faith Exception*

[¶23] The State urges this Court to adopt and apply the "good faith" exception to the exclusionary rule set out in *United States v. Leon*,[10] which would sustain the admission of Appellant's BAC blood test at trial even if the affidavit was deficient. In *Leon*, the United States Supreme Court created a good faith exception to the exclusionary rule. Under that ruling, if an officer relies in good faith upon a search warrant, the fruits of the search will not be suppressed simply because the warrant is later determined to have been invalid.[11]

[¶24] We have previously acknowledged that this exception exists under the Fourth Amendment to the United States Constitution, but we have declined to determine if it should be recognized under the parallel provisions of the Wyoming Constitution, Article 1, Section 4.[12] This Court must again decline to do so in this case. The issue was not decided by the district court, which received no briefing on that question from the parties, and no facts relevant to the determination of good faith were developed. A determination

---

[10] 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

[11] *Id.* at 922, 104 S.Ct. at 3420; *see also Davis v. United States*, 131 S. Ct. 2419, 2428-29, 180 L.Ed.2d 285 (2011) (good faith exception applies to objectively reasonable reliance on binding appellate authority that is later overruled); *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (applying the good-faith exception to bar application of the exclusionary rule in a case involving police error regarding a warrant).

[12] *Rohda*, ¶ 2 n.1, 142 P.3d at 1158; *Page*, ¶ 16, 63 P.3d at 911.

of whether the good faith exception might apply would require, *inter alia*, the testimony of the officer executing the affidavit. Unfortunately, Deputy Gibson did not testify at the suppression hearing. We therefore have no facts to demonstrate that this is an appropriate case to consider whether a good faith exception should become part of the Wyoming Constitution's protections against unreasonable search and seizure.

## CONCLUSION

[¶25] We hold that the search warrant affidavit was required to include more than the bare conclusions provided to establish probable cause that Appellant was the driver of the vehicle. The district court erred in denying Appellant's motion to suppress the results of his blood alcohol concentration test.

[¶26] Reversed.