COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges Beales and White
Argued at Richmond, Virginia


ALEXIS JONATHAN AMAYA

                                             MEMORANDUM OPINION[*] BY
v.       Record No. 1123-21-2          JUDGE KIMBERLEY SLAYTON WHITE
                                                SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

Lauren Whitley (Office of the Public Defender, on briefs), for
appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Alexis Jonathan Amaya of felony driving under the influence,

third or subsequent offense within ten years, and sentenced him to five years of incarceration

with four years and nine months suspended.  Amaya challenges his conviction, arguing that the

trial court erred by denying his motion to suppress evidence seized under a search warrant

because, he claims, the warrant affidavit was made with a "reckless disregard for the truth" and

misled the magistrate.[1]

For the following reasons, we affirm the trial court's judgment.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge William E. Glover denied Amaya's motion to suppress.

BACKGROUND

In reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the Commonwealth, 'granting to it all reasonable inferences deducible therefrom.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 64 (2021) (quoting *Thomas v. Commonwealth*, 72 Va. App. 560, 574 (2020)). Around 2:35 a.m. on February 9, 2020, Virginia State Police Trooper A.T. Burrows arrived at the scene of a vehicle accident. Trooper Burrows saw a blue, four-door BMW "partially underneath" the rear of a tractor trailer in the right travel lane. Amaya was "moaning" as he lay on the ground near the BMW's open, front passenger door. Amaya was able to state that his first name was Alexis. He had "lots of blood in his mouth" and "broken and missing teeth on the left side of his face." He also had "major facial injuries," including a large laceration on his left cheek. Amaya was "losing consciousness," so Trooper Burrows tried to "keep him awake" until emergency medical personnel arrived a few minutes later.

After an ambulance transported Amaya to a hospital, Trooper Burrows examined the accident scene. The BMW and the rear of the tractor trailer had sustained "very extensive damage." A "debris field," including glass, car parts, and a license plate, extended thirty-seven feet "down the roadway." There were no "skid" or "tire marks" indicating that the BMW had applied the brakes before the collision. The tractor trailer driver, Cecil Barfield, told Trooper Burrows that he had been stopped on the road with his "flashers on" for about thirty seconds before the collision.

At Trooper Burrows's direction, Barfield drove the tractor trailer forward several feet to free the BMW. Once the BMW was free, Trooper Burrows "pulled . . . hard" on its driver's door, but it would not open. Inside the BMW, a large amount of blood was around "the driver's area, specifically on the driver's door." A "lesser amount" of blood was on the front passenger

seat. During an inventory search before the BMW was towed, Trooper Burrows found a backpack on the front passenger floorboard that contained a "green plant-like material consistent with marijuana," empty plastic baggies, a marijuana grinder, "rolling papers," and "a rolling tray."

At 12:30 a.m. on February 10, Trooper Burrows sought a search warrant for Amaya's blood samples "drawn by medical staff" at the hospital for "chemical testing of the contents of his blood" to "precisely determine the alcohol/drug level." He also sought any "test results, notes and information pertaining to [Amaya's] . . . treatment." In support of the application for a search warrant, Trooper Burrows executed an affidavit stating:

> On 2/9/20 at approximately 0235 hours I was dispatched to a motor vehicle crash . . . . I arrived on scene and observed a BMW sedan wedged under the rear passenger side corner of a tractor trailer and the driver of the BMW lying on the ground severely injured and covered in blood. The driver was identified as Alexis Jonathan Amaya. A DMV record check indicated that Amaya had two prior DUI convictions. Amaya was transported to [a hospital] for treatment. There was a strong odor of marijuana in the vehicle and several grams of marijuana were recovered from a backpack in the vehicle. I observed that the BMW had left an extensive debris field indicating that it was traveling at a high rate of speed at the time of the crash. I also did not observe any skidding or tire marks to indicate brake usage. I was unable to talk with Amaya at the hospital due to the serious[ness] of his injuries.

Trooper Burrows checked a box on the affidavit indicating that he had "personal knowledge of the facts set forth in this affidavit" and stated that he had "made approximately 150 DUI arrests." A magistrate issued a search warrant, and subsequent forensic testing revealed that Amaya's blood had a blood alcohol content of 0.137.

On October 2, 2020, Trooper Burrows sought and obtained a second search warrant for "[h]osptial records, test results, notes and information pertaining to" Amaya's treatment after the accident. In support of the application, he attached the same affidavit and again indicated that he had "personal knowledge of the facts" recited in the affidavit. He also asserted that the requested

- 3 -

hospital records would assist him in "determining the chemical contents of [Amaya's] blood" and "the placement of Amaya within the vehicle at the time of the crash."

Amaya was charged with driving under the influence, third or subsequent offense within ten years. In March 2021, he moved the trial court to suppress all evidence seized under the above warrants. He argued that Trooper Burrows's assertion in both affidavits that "the driver was identified" as Amaya was made with a "reckless disregard" of the truth because he "did not in fact observe Amaya driving." Accordingly, he asked the trial court to hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).[2] After Amaya filed his motion to suppress, Trooper Burrows sought and obtained a third search warrant for hospital records, test results, notes, and other information concerning Amaya's medical treatment following the accident. The affidavit attached to that application contained details not previously included, including that a man who identified himself as Amaya was on the ground outside the front, passenger door, that the BMW's driver's door could not be opened because of the "extensive vehicle damage," that blood was in both the driver and front passenger compartments, and that a "DMV check revealed" that Amaya was the BMW's registered owner. The affidavit also reported that "BMW assist made a 911 or emergency call" "in the minutes after" the accident and reported "that the BMW had one occupant and identified the driver . . . as Lex Amaya." Trooper Burrows indicated that he had "personal knowledge of the facts set forth in the affidavit" and that Barfield had "advised" him of some of the facts. Following the third warrant, Amaya filed an addendum to his motion to suppress asserting, in part, that the third warrant was "an attempt . . . to cure Constitutional defects with the evidence" and that the Commonwealth should be prohibited from "using the evidence obtained" under the third warrant.

---

[2] In *Franks*, the United States Supreme Court recognized a criminal defendant's right to challenge a warrant that was issued upon an affidavit that contained "a deliberately or reckless[ly] false statement." 438 U.S. at 155-56, 165.

- 4 -

At the hearing on the motion to suppress, Amaya argued that he was entitled to a *Franks* hearing because Trooper Burrows's assertion "in the affidavit that the driver was identified as Alexis Amaya" was a "material misstatement" that "if removed render[ed] probable cause completely not existent." Amaya contended that the stated purpose for the *second* search warrant—to assist in determining "the placement of Amaya within the vehicle at the time of the crash"—demonstrates that Trooper Burrows did not have personal knowledge that Amaya had been the driver when he sought the *first* search warrant. Amaya did not argue that Trooper Burrows had been intentionally "dishonest"; rather, that he displayed a reckless disregard for the truth and misled the magistrate. When the trial court asked Amaya to "put [his] finger" on the statement he believed Trooper Burrows had "made with reckless disregard" for the truth, he identified only the assertion that Trooper Burrows had "personal knowledge" that "[t]he driver was identified as Alexis Jonathan Amaya."

The trial court found that "the threshold [had been] met" to proceed to a *Franks* hearing, but limited the scope of the hearing to whether the "one conclusory sentence" Amaya identified had been made with a reckless disregard for the truth. Amaya agreed and added that he would "eventually" argue "that the second and third affidavits [were] fruits of the poisonous tree."

During the ensuing *Franks* hearing, Trooper Burrows testified that he arrived at the scene of the accident before emergency medical personnel. Amaya was lying on the ground outside the open, passenger door and did not say anything to Trooper Burrows "other than his name." Trooper Burrows admitted that his original affidavit did not include any statements Amaya made to the medical personnel and "nobody . . . had actually witnessed [Amaya] operating the vehicle." He also had not included any of Barfield's statements, his "observations" regarding the BMW's doors, or the location and quantity of the blood in the passenger compartment. Trooper Burrows confirmed that he "stated under oath in [his] affidavit" that *he* "had identified the . . .

- 5 -

driver" as Amaya. He acknowledged that he "probably should" have included in the affidavit more of the "observations" that led him to that conclusion.

Given Trooper Burrows's concession that he "probably should" have included more details, Amaya argued that Trooper Burrows "acted with reckless disregard for the truth in submitting [the] affidavit" because "[i]t simply wasn't the case that he identified" Amaya as the driver. He argued that Trooper Burrows "may have had a suspicion that [Amaya] was the driver," but nobody saw Amaya driving, and Trooper Burrows "had not identified [Amaya] as the driver." He maintained that there was evidence suggesting "that somebody else was driving" and had "a motive to flee." Accordingly, he asked the trial court to "suppress all evidence received as a result" of the first search warrant. If the trial court agreed, he also asked "to talk about the second and third" warrants "being fruits of the poisonous tree."

The trial court denied Amaya's motion, finding that Trooper Burrows did not "recklessly" make a "material misrepresentation" when he completed the warrant affidavit. Instead, the trial court found that the affidavit described "exactly what the Trooper did"— investigate the accident scene and identify Amaya as the driver. The trial court ruled that although Trooper Burrows could have "use[d] other words," there was "no misrepresentation" and "no reckless disregard for the truth."[3] Amaya appeals.

ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*." U.S. Const. amend. IV (emphasis added). By requiring "a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks*, 438 U.S. at 164-65 (quoting *United States v. Halsey*, 257

---

[3] The trial court also found that, given its holding, Amaya's "objections to the subsequent search warrants are obviated."

F.Supp. 1002, 1005 (S.D.N.Y. 1966)). "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . . But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 165. Accordingly, "where [a] defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit," and "the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56. If, at that hearing, the defendant establishes "the allegation of perjury or reckless disregard . . . by a preponderance of the evidence, . . . the search warrant must be voided and the fruits of the search excluded." *Id.* at 156.

Amaya argues that the trial court erred by finding that Trooper Burrows had not acted with a "reckless disregard for the truth" in submitting the affidavit because Amaya had not been "identified" as the driver and "Trooper Burrows did not have personal knowledge of [that] fact." He insists that Trooper Burrows's affidavit "affirmatively" states that either "a person identified [Amaya] as the driver through personal observation, or that [Amaya] confessed to driving the BMW," neither of which is true. He maintains that, "at best," Trooper Burrows limited the magistrate's probable cause determination by inserting his "own conclusion" into the affidavit while excluding information about where Amaya was lying and the blood on the passenger seat. We disagree.

*Franks* only "protects" against falsehoods or omissions "that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Williams v. Commonwealth*, 26 Va. App. 612, 618 (1998) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)); *Gregory v. Commonwealth*, 46 Va. App. 683, 694 (2005) ("To obtain suppression of the fruits of a search warrant under *Franks*, a defendant must establish that the

affidavit . . . contained a *deliberate* falsehood or omission." (emphasis added)). To be sure, warrant affidavits "are normally drafted by non-lawyers in the midst and haste of a criminal investigation." *Adams v. Commonwealth*, 275 Va. 260, 276 (2008) (quoting *Drumheller v. Commonwealth*, 223 Va. 695, 698 (1982)). Accordingly, "'mere negligen[ce] in . . . recording the facts relevant to a probable-cause determination' is not enough." *Williams*, 26 Va. App. at 618 (quoting *Colkley*, 899 F.2d at 301). A trial court's decision during a *Franks* hearing regarding whether an officer "intentionally" or "recklessly misled the magistrate" in a warrant affidavit is a factual finding that will not be disturbed on appeal unless plainly wrong or without evidentiary support. *Id.* (citing *West v. Commonwealth*, 16 Va. App. 679, 689 (1993)).

The record supports the trial court's finding that there was "no misrepresentation" in the warrant affidavit and Trooper Burrows did not act with a "reckless disregard for the truth" by asserting that "[t]he driver was identified as Alexis Jonathan Amaya." At the *Franks* hearing, Trooper Burrows confirmed that he "stated under oath in [his] affidavit" that *he* "had identified the . . . driver" as Amaya. He based that conclusion on his investigation of the accident scene, which revealed that the BMW's driver's door would not open, and Amaya, the only individual near the BMW, was lying on the ground outside the open, front passenger door. Amaya had "lots of blood in his mouth," "broken and missing teeth on the left side of his face," and a large laceration on his left cheek. When Trooper Burrows inspected the inside of the BMW, he saw a "large amount" of blood in the driver's area and a "lesser amount" on the front passenger seat. Considering all the circumstances, Trooper Burrows's avowal that he "had identified the . . .

driver" as Amaya was, at a minimum, truthful "in the sense that" it was "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.[4]

Amaya's reliance on *Snell v. State*, 322 P.3d 38 (Wyo. 2014), is misplaced. *Snell* is not a *Franks* case; instead, the Wyoming Supreme Court addressed whether a warrant affidavit was "too conclusory" to establish probable cause because it failed to inform the magistrate "how [the officer] knew that [the defendant] was the driver of the vehicle." *Id.* at 43, 47. In this case, however, Amaya did not argue that the warrant affidavit was too conclusory to support the magistrate's probable cause determination. Rather, he requested a *Franks* hearing based on his argument that Trooper Burrows made a recklessly false statement in the affidavit by stating, "[t]he driver was identified as Alexis Jonathan Amaya." As noted above, the trial court's finding that Trooper Burrows made "no misrepresentation" and had "no reckless disregard for the truth" is not plainly wrong or without evidentiary support, so it will not be disturbed on appeal.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*.

---

[4] Amaya also argues that Trooper Burrows was "reckless in his disregard" for the truth when he *omitted* information from the affidavit, including that Amaya was "found lying outside the passenger's side door," not the driver's door, and "that no one actually identified [Amaya] as the driver." Amaya, however, did not present that argument to the trial court. Indeed, when the trial court asked him to "place [his] finger" on the alleged infirmity with the affidavit, Amaya identified only the representation that Trooper Burrows had "personal knowledge" that "the driver was identified as Alexis Amaya." As the trial court did not have the opportunity to rule on the argument that Trooper Burrows misled the magistrate by recklessly omitting information from his affidavit, Rule 5A:18 bars our consideration of that argument for the first time on appeal. *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) ("[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011))). Although there are exceptions to Rule 5A:18, Amaya did not invoke them in his opening brief, and this Court will not consider those exceptions *sua sponte*. *Id.* at 269 n.6.